FILED
14-1029
5/13/2015 3:52:28 PM
tex-5272581
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

## NO. 14-1029

## IN THE SUPREME COURT OF TEXAS

JEFFERSON COUNTY, TEXAS,
*Petitioner*

v.

DONNA DAVIS,
*Respondent*

## ON PETITION FOR REVIEW FROM THE FOURTEENTH COURT OF APPEALS, HOUSTON, TEXAS
No. 14-13-00663-CV

## BRIEF OF PETITIONER

Kathleen Kennedy
Chief Civil Attorney
State Bar No. 00798314
kkennedy@co.jefferson.tx.us
Office of Criminal District Attorney
1001 Pearl Street, 3rd Floor
Beaumont, Texas 77701
(409) 835-8550; Fax: (409) 784-5893

Jeremy Stone
MehaffyWeber, P.C.
State Bar No. 24013577
jeremystone@mehaffyweber.com
500 Dallas, Suite 1200
Houston, Texas 77002
(713) 655-1200; Fax (713) 655-0222

David Gaultney
MehaffyWeber, P.C.
State Bar No. 07765300
davidgaultney@mehaffyweber.com
823 Congress Avenue, Suite 200
Austin, Texas 78701
(512) 394-3840; Fax: (512) 394-3860

Patricia Chamblin
MehaffyWeber, P.C.
State Bar No. 04086400
patriciachamblin@mehaffyweber.com
P.O. Box 16
Beaumont, Texas 77704
(409)835-5011; Fax (409) 835-5177

ATTORNEYS FOR PETITIONER
JEFFERSON COUNTY, TEXAS

# IDENTITY OF PARTIES AND COUNSEL

*Petitioner*

Jefferson County, Texas

Represented by:
David Gaultney
MehaffyWeber, P.C.
State Bar No. 07765300
davidgaultney@mehaffyweber.com
823 Congress Avenue, Suite 200
Austin, Texas 78701
Phone: (512) 394-3840
Fax: (512) 394-3860

Patricia Chamblin
MehaffyWeber, P.C.
State Bar No. 04086400
patriciachamblin@mehaffyweber.com
P.O. Box 16
Beaumont, Texas 77704
Phone: (409)835-5011
Fax (409) 835-5177

Jeremy Stone
MehaffyWeber, P.C.
State Bar No. 24013577
jeremystone@mehaffyweber.com
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax (713) 655-0222

Kathleen Kennedy
Chief Civil Attorney
State Bar No. 00798314
kkennedy@co.jefferson.tx.us
Office of Criminal District Attorney
1001 Pearl Street, 3rd Floor
Beaumont, Texas 77701
Phone: (409) 835-8550
Direct: (409)835-8577
Fax: (409)784-5893

*Respondent*

Donna Davis

Represented by:
Iain G. Simpson
Simpson, PC
Iain@simpsonpc.com
1333 Heights Blvd., Suite 102
Houston, Texas 77008
Phone: (281)989-0742
Fax: (281)596-5960

Larry Watts
Azuwuike "Ike" Okoro Okorafor
Watts & Associates
wattstrial@gmail.com
P. O. Box 2214
Missouri City, TX 77459
Phone: (281) 431-1500
Fax: (281) 431-1298

# TABLE OF CONTENTS

Identity of Parties and Counsel ..................................................ii

Table of Contents ..................................................................iv

Index of Authorities.............................................................. viii

Statement of the Case.............................................................xv

Statement of Jurisdiction...................................................... xvii

Issues Presented.................................................................. xviii

    1.    The jury found that age was one of several motivating factors for the termination. Does the "motivating factor" standard require proof that age animus was actually responsible for the termination, that is, proof of causation-in-fact? Specifically, are retirement comments, statements nearly a year before the termination, and a birthday-cake joke legally sufficient evidence that age was a motivating factor for the termination? ............. xviii

    2.    Front pay is not mentioned in the statute. Is front pay recoverable under Chapter 21 of the Labor Code and, if so, as capped compensatory damages or as equitable relief? Do the limits on remedies in the statute determine the extent of the waiver of governmental immunity to suit? ...................................... xviii

    3.    Did the Court of Appeals err by holding that the state statutory cap is an affirmative defense? ................... xviii

    4.    Did the County's assertion in issue seven that Davis is entitled to "back wages and equitable relief only" – and the separate argument in issue nine challenging the jury "verdict on damages" as

"outrageous" and the result of a "run-away jury" – preserve challenges to the award of front pay and to the excessiveness of the damages? ............................... xviii

5.    The County raised issues that were not decided by the Court of Appeals. TEX. R. APP. P. 53.4. Davis's statement concerning a personal debt was not protected speech. No First Amendment protected right was violated. No policy, custom, or practice of the County caused any violation of Davis's federally protected rights. Imposing civil rights liability on the County based on principles of respondeat superior is improper as a matter of law. No legally sufficient evidence supports the jury's liability findings. The excessive damages award is "outrageous." The County asks this Court to consider these issues and render a take-nothing judgment on all claims, remand for a new trial, or remand the cause for consideration of the remaining issues by the Court of Appeals. .......................... xix

Statement of Facts ............................................................... 1

Summary of Argument ....................................................... 26

Argument ............................................................................ 28

I.    The "motivating factor" standard requires proof that age animus was responsible for and a legal cause of the termination. Retirement comments, statements nearly a year before the termination, and a birthday-cake joke are not legally sufficient proof that age was a motivating factor in the termination ............................................................. 28

A. The evidence is legally insufficient to establish that Davis's termination was the result of age discrimination...........................29

    1. No pretext...........................................29

    2. No direct evidence ...............................33

    3. A permissible reason...........................37

B. The record establishes that the termination would have occurred in the absence of an impermissible motivating factor. The December meeting, not any impermissible factor, was the cause of the termination. On this record, damages cannot be awarded against the County..........................................42

    1. Trial by consent..................................43

    2. Cause-in-fact .....................................44

    3. Causation in a pretext case.................48

II. Davis was not entitled to recover front pay. .........................52

A. Front pay is not recoverable under Chapter 21 of the Texas Labor Code..........................................53

B. If front pay is an available equitable remedy under Chapter 21, it is not recoverable in this case as a matter of law..........................................56

III. Several federal courts and a Kentucky appellate court have determined that the federal statutory damages cap is an integral part of the statutory scheme and is not an affirmative defense that must be pleaded. The Court of Appeals erred by

holding that the state statutory cap is an affirmative defense. ...................................................59

IV. The Court of Appeals erred in ruling that the County waived its challenge to the award of front pay and to the excessiveness of the damage award. ...............................................................63

V. The Court should reverse and render a take-nothing judgment on all claims or, alternatively, remand the cause to the Court of Appeals for consideration of those issues not decided by that court. ...................................................................65

    A. But-for causation ...........................................65

        1. The *Mt. Healthy* rule ............................65

        2. The retaliation claims .........................67

    B. Analysis of First Amendment claims...........................69

    C. Davis's First Amendment claims ...............................72

        1. Meeting with Commissioner...............................72

        2. Age or retirement .................................75

        3. The transfer .......................................78

        4. The debt.............................................81

Prayer.............................................................86

Certificate of Compliance ........................................89

Certificate of Service...............................................90

Appendix .............................................................91

# INDEX OF AUTHORITIES

**Cases**

*Alexander v. Eads,*
    392 F.3d 138 (5th Cir. 2004)..............................................76, 77, 85

*Arismendez v. Nightingale Home Health Care, Inc.,*
    493 F.3d 602 (5th Cir. 2007).....................................................33

*AutoZone, Inc. v. Reyes,*
    272 S.W.3d 588 (Tex. 2008) (per curiam)...................33, 34, 35, 36

*Barth v. Hoffmann-La Roche, Inc.,*
    No. 05-01-00302-CV, 2002 WL 1225684 (Tex. App.—
    Dallas June 6, 2002, no pet.) (not designated for
    publication)..................................................................................34

*Beattie v. Madison County Sch. Dist.,*
    254 F.3d 595 (5th Cir. 2001)................................................74, 81

*Benningfield v. City of Houston,*
    157 F3d 369 (5th Cir. 1998).......................................................71

*Bostic v. Georgia-Pacific Corporation,*
    439 S.W.3d 332 (Tex. 2014)............................................28, 47, 48

*Branton v. City of Dallas,*
    272 F.3d 730 (5th Cir. 2001).....................................70, 71, 85, 86

*Burnside v. Kaelin,*
    773 F.3d 624 (5th Cir. 2014)................................................69, 73

*Caro v. City of Dallas,*
    17 F. Supp. 2d 618 (N.D. Tex. 1998)...........................................75

*Chavez v. Brownsville ISD,*
    135 Fed. Appx. 664 (5th Cir. 2005).......................................71, 85

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2005)......................................................36, 42

*City of San Antonio v. Pollock*,
  284 S.W.3d 809 (Tex. 2009).............................................................58

*Connick v. Myers*,
  461 U.S. 138 (1983) ................ 37, 39, 41, 70, 71, 72, 74, 75, 76, 85

*Core Med., LLC v. Schroeder*,
  No. 2009-CA-000670-MR, 2010 WL 2867820 (Ky. Ct.
  App. July 23, 2010) ........................................................................61

*Davis v. McKinney*,
  518 F.3d 304 (5th Cir. 2008).................................................40, 41, 86

*Estate of Martineau,*
  203 F3d 904 (5th Cir. 2000)..............................................................58, 59

*Finch v. Fort Bend I.S.D.,*
  333 F.3d 555 (5th Cir. 2003)............................................................86

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ...............................................................39, 40, 41

*Gibson v. Kilpatrick*,
  773 F.3d 661 (5th Cir. 2014) *petition for cert. filed*,
  (U.S. Mar. 13, 2015)(No. 14-1112) .............................................40

*Giles v. Gen. Elec. Co.*,
  245 F.3d 474 (5th Cir. 2002)..........................................................59, 60

*Goss v. Exxon Office Sys. Co.*,
  747 F.2d 885 (3d Cir. 1984).............................................................56

*Graziosi v. City of Greenville Mississippi*,
  775 F3d 731 (2015)........................................................................38, 41

*Gross v. FBL Financial Services, Inc.,*
557 U.S. 167 (2009) ..................................................................50, 51

*Hartman v. Moore,*
547 U.S. 250 (2006) ..................................................................52, 66

*Haynes v. City of Beaumont,*
35 S.W.3d 166 (Tex. App.—Texarkana 2000, no pet.) .................77

*Hoffman-La Roche, Inc. v. Zeltwanger,*
69 S.W.3d 634 (Tex. App.—Corpus Christi 2002),
*rev'd on other grounds,*
144 S.W. 3d 438 (Tex. 2004) .....................................................54, 61

*Ingram v. Deere,*
288 S.W.3d 886 (Tex. 2009) ...........................................................44

*Jefferson County v. Davis,*
No. 14-13-00663, 2014 WL 4262184 (Tex. App.—
Houston [14th Dist.] Aug. 28, 2014, pet filed) ..............................53

*Lane v. Franks,*
__U.S. __, 134 S.Ct. 2369 (2014) ..................................................40

*M.D. Anderson Hosp. and Tumor Inst. v. Willrich,*
28 S.W.3d 22 (Tex. 2000) (per curiam) .....................................35, 37

*Manbeck v. Austin Indep. Sch. Dist.,*
381 S.W.3d 528 (Tex. 2012) ...........................................................62

*McCoy v. City of Shreveport,*
492 F.3d 551 (5th Cir. 2007)...........................................................29

*Mission Consol. Ind. School Dist. v. Garcia,*
372 S.W.3d 629 (Tex. 2012).................................................29, 61, 62

*Mooney v. Lafayette Cnty. Sch. Dist.,*
538 Fed. Appx. 447 (5th Cir. 2013) (unpublished) ........................66

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
   429 U.S. 274 (1977) ...............................................................46, 52, 66

*Navy v. Coll. of the Mainland*,
   407 S.W.3d 893 (Tex. App.—Houston [14th Dist.]
   2013, no pet.) ...............................................................................68

*Niu v. Revcor Molded Prods. Co.*,
   206 S.W.3d 723 (Tex. App.—Fort Worth 2006, no
   pet.) .......................................................................................34, 36

*Oliver v. Cole Gift Centers., Inc.*,
   85 F. Supp. 2d 109 (D. Conn. 2000) ........................................59, 61

*Ortega-Guerin v. City of Phoenix*,
   No. CV 04-0289-PHX-MHM, 2006 WL 2403511 (D.
   Ariz. Aug. 14, 2006) .................................................................61

*Paris v. Dallas Airmotive, Inc.*,
   No. Civ.A.3:97CV0208-L, 2001 WL 881278 (N.D.
   Tex. July 30, 2001) ...............................................................60, 61

*Perry v. Cohen*,
   272 S.W.3d 585 (Tex. 2008) ....................................................63

*Pollard v. E.I. du Pont de Nemours & Co.*,
   532 U.S. 843 (2001) ............................................52, 53, 54, 57

*Quantum Chem. Corp. v. Toennies*,
   47 S.W.3d 473 (Tex. 2001) ...............................................29, 49, 50

*Rankin v. McPherson*,
   483 U.S. 378 (1987) ...............................................................70, 76

*Reed v. Neopost USA, Inc.*,
   701 F.3d 434 (5th Cir. 2012)....................................................33, 52

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ...............................................................33

*Sage St. Assocs. v. Northdale Const. Co.*,
  863 S.W.2d. 438 (Tex. 1993)........................................................44

*San Antonio Water Sys. v. Nicholas*,
  __ S.W.3d__, No. 13-0966, 2015 WL 1873217 (Tex.
  Apr. 24, 2015) .................................................................43, 45

*San Antonio Water Sys. v. Nicholas*,
  441 S.W.3d 382 (Tex. App.—San Antonio 2013), *rev'd
  on other grounds,* __S.W.3d__, No. 13-0966, 2015 WL
  1873217 (Tex. Apr. 24, 2015).....................................................54

*Scott v. Flowers,*
  910 F.2d 201 (5th Cir. 1990)..................................................66, 69

*Shorette v. Rite Aid of Maine,*
  155 F.3d 8 (1st Cir. 1998) .......................................................34

*Smith v. Office of Personnel Mgmt.*,
  778 F.2d 258 (5th Cir. 1985)..................................................61, 62

*Soto v. LCS Corrections Servs., Inc.*,
  No. 2:12-CV-130, 2013 WL 4012627 (S.D. Tex. Aug.
  5, 2013) .............................................................................60

*State v. Lueck,*
  290 S.W.3d 876 (Tex. 2009).......................................................62

*Stotter v. University of Texas at San Antonio,*
  508 F.3d 812 (5th Cir. 2007)......................................................85

*Terrell v. Univ. Texas Sys. Police,*
  792 F.2d 1360 (5th Cir. 1986).....................................................70

*Transcon. Ins. Co. v. Crump,*
  330 S.W.3d 211 (Tex. 2010)...................................................45, 47

*Turner v. Perry*,
278 S.W.3d 806 (Tex. App.—Houston [14th Dist.]
2009, pet. denied) ..................................................................................41

*Univ. of Houston v. Barth*,
403 S.W.3d 851 (Tex. 2013)...................................................................62

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
__ U.S. __, 133 S. Ct. 2517 (2013).....................................28, 50, 68

*Wal-Mart Stores, Inc. v. Davis,*
979 S.W.2d 30 (Tex. App.—Austin 1998, pet. denied) ................57

*Weeks Marine, Inc. v. Garza*,
371 S.W.3d 157 (Tex. 2012).............................................................64

*Williams v. Dallas Indep. Sch. Dist.*,
480 F.3d 689 (5th Cir. 2007).......................................................39, 40

*Wilson v. UT Health Center*,
973 F2d 1263 (5th Cir. 1992)..........................................................72

**Statutes**

42 U.S.C. § 2000e-5(g)(1)..................................................................55

TEX. GOV'T CODE ANN. § 22.001....................................................... xvii

TEX. LAB. CODE ANN.  § 21.001..........................................................61

TEX. LAB. CODE ANN. § 21.125 .................................... 32, 42, 43, 49, 51

TEX. LAB. CODE ANN. § 21.258.......................................................54, 55

TEX. LAB. CODE ANN. § 21.2585.........................................................59

**Rules**

TEX. R. APP. P. 38.1 ...............................................................................63

TEX. R. APP. P. 38.9 ...............................................................................63

TEX. R. APP. P. 7.1 ................................................................................59

TEX. R. CIV. P. 67 ..................................................................................43

# STATEMENT OF THE CASE

*Nature of the Case and Parties:* Donna Davis claimed her employment was wrongfully terminated by Jefferson County. The jury found that age was one of several motivating factors for her termination and found damages in excess of $1.3 million.

*Trial Court:* The Honorable Gary Sanderson, 60th District Court, Jefferson County.

*Trial Court's Disposition:* The trial court signed a judgment, including interest and attorney fees, awarding over $1.7 million to Donna Davis.

*Court of Appeals:* The Fourteenth Court of Appeals: memorandum opinion by Justice Christopher, joined by Justice Jamison. Justice McCally dissented concerning future mental anguish. The Court issued a supplemental memorandum opinion on denial of rehearing.

*Disposition:*  The Court of Appeals modified the trial court's judgment to eliminate the award of $500,000 for future mental anguish and affirmed the judgment as modified. *See Jefferson County v. Davis*, No. 14-13-00663-CV, 2014 WL 42621 (Tex. App.—Houston [14th Dist.] August 28, 2014, pet. filed).

# STATEMENT OF JURISDICTION

The Supreme Court has jurisdiction under Government Code section 22.001(a)(6) because the Court of Appeals committed an error of law of such importance to the jurisprudence of the State that it requires correction. The Court has jurisdiction under Government Code section 22.001(a)(3) because the case involves the construction of a statute, Chapter 21 of the Labor Code, necessary to a determination of the case. Governmental immunity to suit is implicated.

# ISSUES PRESENTED

1.  The jury found that age was one of several motivating factors for the termination. Does the "motivating factor" standard require proof that age animus was actually responsible for the termination, that is, proof of causation-in-fact? Specifically, are retirement comments, statements nearly a year before the termination, and a birthday-cake joke legally sufficient evidence that age was a motivating factor for the termination?

2.  Front pay is not mentioned in the statute. Is front pay recoverable under Chapter 21 of the Labor Code and, if so, as capped compensatory damages or as equitable relief? Do the limits on remedies in the statute determine the extent of the waiver of governmental immunity to suit?

3.  Did the Court of Appeals err by holding that the state statutory cap is an affirmative defense?

4.  Did the County's assertion in issue seven that Davis is entitled to "back wages and equitable relief only" – and the separate argument in issue nine challenging the jury "verdict on damages" as "outrageous" and the result of a "run-away jury" – preserve challenges to the award of front pay and to the excessiveness of the damages?

5. The County raised issues that were not decided by the Court of Appeals. TEX. R. APP. P. 53.4. Davis's statement concerning a personal debt was not protected speech. No First Amendment protected right was violated. No policy, custom, or practice of the County caused any violation of Davis's federally protected rights. Imposing civil rights liability on the County based on principles of respondeat superior is improper as a matter of law. No legally sufficient evidence supports the jury's liability findings. The excessive damages award is "outrageous." The County asks this Court to consider these issues and render a take-nothing judgment on all claims, remand for a new trial, or remand the cause for consideration of the remaining issues by the Court of Appeals.

# STATEMENT OF FACTS

By 2007, the Jefferson County Purchasing Department had a twenty-year history of turmoil.[1] The most recent crisis involved the resignation of the Purchasing Agent in early 2007 related to the use of the County print shop for her personal business;[2] she had been reported by Deb Clark, who was named interim Purchasing Agent after the resignation.[3]

Alyce Williams, a Purchasing Department employee, said that when she started in 1999 she realized it was a very strange atmosphere.[4] The office was in turmoil.[5] It involved everyone, including Plaintiff Donna Davis.[6] Williams said there was a lot of discord in the air.[7] She testified that it was always a hindrance to whatever was going on in the office.[8]

---

[1] 2RR101-102;3RR137.
[2] 2RR102,104-5;2RR7-8(timing);5RR21(timing);2RR36(under a shadow);2RR58(under a cloud);2RR59 (early 2007); 5RR13.
[3] 2RR6-7,59-60;8 RR, Plaintiff's Ex. 8;3RR328-3239-40;5RR13-15.
[4] 2RR7.
[5] 2RR7, 35-36.
[6] 2RR7.
[7] 2RR7.
[8] 2RR8.

When Clark applied to be the permanent Purchasing Agent in 2007,[9] Tamara Edwards, another department employee, told Davis that she supported Clark's appointment by speaking to Commissioner Domingue and a District Judge.[10] Edwards asked if Davis was going to put in a good word with the Purchasing Board.[11] Davis did not feel comfortable talking to the Purchasing Board or the Commissioners because she did not feel like she really knew them.[12]

When Edwards raised the issue again, Davis talked to Alyce Williams.[13] Davis was concerned that if they did not speak on Clark's behalf, Clark might think that they were disloyal and might not trust them if she became Purchasing Agent.[14]

Williams, who attended the same church as Commissioner Domingue, told Davis that she was going to speak to him.[15] Williams invited Davis to go with her.[16] They met Domingue at his office before

---

[9] 2RR60.
[10] 5RR21-22.
[11] 5RR21-22.
[12] 5RR22.
[13] 5RR22.
[14] 5RR22.
[15] 5RR22-23.
[16] 5RR22-23.

work one day.[17] After exchanging pleasantries, they turned to the Purchasing Department.[18] In describing the conversation, Williams testified that they wanted the new Purchasing Agent "to be a person of character, that the ongoing drama in the department was difficult and we would like to see someone in charge who was a person of character who would be a leader."[19] Davis testified that Williams told Domingue they were hoping the new Purchasing Agent would be a "good leader," someone so the "office would be in a better way," so that things would "calm down and there wouldn't be so much turmoil and confusion leftover from what had been going on."[20]

Domingue interrupted Williams and said that, before they said whether they liked Clark or not, there was no way Clark was getting the job.[21] He said that there was too much "bad stuff" in Clark's past.[22] He said if either of them was Clark's friend, they would tell Clark to

---

[17] 5RR23.
[18] 5RR23.
[19] 2RR9.
[20] 5RR23-24.
[21] 5RR24.
[22] 5RR24.

withdraw her application.[23] Neither Davis nor Williams expressed an opinion about Clark.[24] Davis testified that she would have said good things about Clark.[25]

Neither Davis nor Williams wanted to tell Clark to withdraw her application.[26] About a week later, Williams saw Domingue at church.[27] Domingue reiterated that if she was Clark's friend she should tell her to withdraw.[28] After this second conversation, Williams told Clark that she should withdraw her application,[29] and Clark did so.[30] Doug Anderson was hired as Purchasing Agent in April 2007.[31] Clark returned to her job as Assistant Purchasing Agent.[32]

Anderson spent twenty years in the Navy and retired in March 2007.[33] After he was hired by the County, Anderson spoke to Cary

---

[23] 5RR24-25;2RR10.
[24] 6RR31-33.
[25] 6RR33.
[26] 5RR25.
[27] 5RR26.
[28] 2RR11;5RR26.
[29] 2RR11;5RR27.
[30] 5RR27;2RR11-12;3RR146-47.
[31] 4RR40-43,72.
[32] 4RR47.
[33] 4RR37,40-41,72.

Erickson, the County's Director of Human Resources.[34] Erickson told Anderson about the various personnel issues that had occurred over the years.[35] Erickson provided him two large notebooks that Anderson believed were the official record of the District Attorney's office investigations of the Department.[36]

On his first day, Anderson met with the Purchasing Board, various courthouse leaders, and then over a period of several weeks he met elected officials.[37] As he talked to various people, he learned of the Department's terrible reputation.[38] He was told that he could "blow it up" and fire all the Department's employees or try to "play with the hand that [he] was dealt."[39] This testimony not only came from Anderson, but also from Clark, who provided Anderson a list of employees and her reasons he should not terminate anybody.[40]

---

[34] 4RR42(director of HR).
[35] 4RR45-46.
[36] 4RR45-46.
[37] 4RR46-47.
[38] 4RR60.
[39] 4RR50.
[40] 3RR44-45;4RR78.

Erickson told Anderson that if he was going to fire anyone he should do it early on.[41] Anderson could have fired everyone and started over with a clean slate, but he did not feel that was best for the County.[42] He said: "I tried to play what I was dealt there. I didn't want to fire anybody."[43]

On his second day, Anderson met with the staff.[44] He testified: "I introduced myself, explained there would definitely be changes as we went through here and that I understand that the office had been in turmoil for roughly 20 years and that was going to stop now, that it was not gonna be tolerated, that we would not go forward like that."[45]

Anderson conducted one-on-one meetings with the Department employees.[46] He started with Clark and explained to her that he would be the liaison with the County and she would run the office.[47]

Anderson then began meeting with the other employees. He said the purpose of the meetings was to learn about the employees, give them

---

[41] 4RR50.
[42] 4RR48.
[43] 4RR50.
[44] 4RR46.
[45] 4RR47.
[46] 4RR51.
[47] 4RR54.

6

an opportunity to share any thoughts that they had, and develop a rapport.[48] He "asked everyone about their age."[49]

Alyce Williams testified that at the individual meetings Anderson wanted to get to know a little about their background and get to know them.[50] During her meeting, Williams was asked how long she had been there and what brought her to Texas.[51] She "did a resume for him," and he "surmised" that she was a few years older than he.[52] Williams testified Anderson told her she was old enough to be his older sister.[53] She replied, "I guess you are old enough to be my younger brother."[54] When asked at trial how that made her feel, she said that it really "didn't really strike [her] at the time."[55] Anderson asked what she thought he needed to know about purchasing, and she gave him a letter describing

---

[48] 4RR73.
[49] 4RR72.
[50] 2RR12.
[51] 8RR, Plaintiff's Ex. 1, question 7.
[52] 8RR, Plaintiff's Ex. 1, question 7.
[53] 2RR12.
[54] 8RR, Plaintiff's Ex. 1, question 7.
[55] 2RR13.

7

the problems in the department in the hope that it would help him get the Department back on track.[56]

During Tina Williams's interview, Anderson asked about her past jobs, her age, and the year she graduated from high school.[57] He also asked if she was married and her husband's age.[58] He commented that she had robbed the cradle because she was six years older than her husband.[59] She thought this was an inappropriate comment but also felt "he was trying to get to know me."[60]

During Davis's meeting, he said that she was old enough to be his sister or his oldest sister.[61] He testified he did not mean anything in particular by the comment—he was trying to say that they were about the same age and was trying to develop a rapport and get her to talk about herself.[62]

---

[56] 8RR, Plaintiff's Ex. 1, question 7;2RR13-14;2RR34.
[57] 8RR, Plaintiff's Ex. 3, question 7;2RR75-76.
[58] 8RR, Plaintiff's Ex. 3, question 7;2RR75-76.
[59] 8RR, Plaintiff's Ex. 3, question 7;2RR75-76.
[60] 8RR, Plaintiff's Ex. 3, question 7;2RR75-76.
[61] 4RR72-73;5RR4.
[62] 4RR72-73.

Davis also recalled that Anderson commented that she was old enough to retire.[63] Davis testified that she responded: "And I said 'I'm not eligible. I'm not old enough. I haven't been here enough years for my age and my years of service to equal 75 years, which is the requirement for retiring.'"[64] In 2007 she would have been eligible to retire in 2009.[65] Alyce Williams testified that Davis told her that she planned to retire in a few years.[66]

Anderson implemented weekly office meetings.[67] Davis testified that in these meetings Anderson referred to Davis's impending retirement eligibility.[68] Davis testified she "knew" he was really talking about her age.[69] When asked in written questions if she ever heard Anderson talk about Davis's age, co-worker Edwards said: "No."[70] When asked if she heard Anderson speak about Davis's age, co-worker

---

[63] 5RR4-5.
[64] 5RR5.
[65] 6RR42-43.
[66] 2RR38; 8RR, Plaintiff's Ex. 1, question 4.
[67] 2RR65(regular);2RR109(weekly).
[68] 5RR56-57;2RR74.
[69] 5RR56-57.
[70] 8RR Defendant's Ex. 1, question 5.

9

Tina Williams said in her statement: "No, not in front of me."[71] When asked if she recalled Anderson talking to Davis about her age at any time, co-worker Alyce Williams said in her statement: "Not that I can recall."[72] Clark, said: "No, I have not heard him talk about her age."[73]

Things changed at the Department. Anderson was in charge and was a liaison who represented the Department to other departments.[74] Clark was more of the day-to-day go-to person.[75] Alyce Williams testified that, having worked for military and civilian employers, Anderson's style was more like that of the military, more structured, formal, with clear-cut duties and responsibilities.[76] When asked if Anderson ran a tight ship, Edwards said that it was different— sometimes he would close down the office for half a day to clean and then he would inspect to make sure it was clean.[77] He also did not like the employees playing games at their desks, which they did sometimes.[78]

---

[71] 8RR Plaintiff's Ex. 3, question 4;2RR74.
[72] 8RR Plaintiff's Ex. 1, question 5.
[73] 8RR Plaintiff's Ex. 7, question 2.
[74] 3RR54;2RR48.
[75] 2RR48;2RR66.
[76] 2RR37-38; 2RR82-83.
[77] 2RR11;2RR82-83.
[78] 2RR11;2RR82-83

At some point, Anderson decided the Department was overstaffed and he needed to reduce the number of employees.[79] By around 3:00 p.m., the staff was not working.[80] Sometimes he would let them go early.[81] Anderson felt that he could reduce the staff by two.[82] He was hoping to accomplish this over a year or two.[83] Possible ways to reduce staff were to transfer someone, not replace someone who retired, or delete a position and terminate the person who held the deleted position.[84]

Anderson did not intend to reduce the staff by firing someone or deleting their position.[85] His preference was to reduce the staff by transferring people.[86] Anderson discussed his proposed staff reduction with Erickson around budget time.[87] Erickson testified that Anderson "felt like he had too many people in his department, that at the end of the day, seemed like people were not very busy and he felt like he could get

---

[79] 3RR144;4RR59
[80] 4RR90.
[81] 2RR111.
[82] 4RR90-91.
[83] 4RR93.
[84] 4RR88-89.
[85] 4RR92.
[86] 4RR92.
[87] 6RR85.

11

rid of one or two people and it would be to the County's advantage."[88]

Erickson suggested that perhaps he should go through a few budget cycles before making a decision, noting that once a department lost an employee it was hard to get one back.[89]

Anderson continued to believe that the Department was overstaffed. He did not intend to accomplish staff reduction by firing anyone.[90] Instead, he started looking for other ways to reduce staff. For example, he tried to assist one employee move to a higher paying job, but she did not want to leave.[91]

At the same time, Erickson needed to add an H.R. Department employee to implement a new courthouse security program that required badges.[92] Anderson and Erickson discussed the idea of transferring someone from Purchasing to H.R.[93] Erickson told Anderson that the only Purchasing Department employee that he would take was Alyce

---

[88] 6RR85.
[89] 6RR85-86.
[90] 4RR92-93.
[91] 4RR91-92.
[92] 6RR86-88.
[93] 6RR87-88.

12

Williams.[94] Erickson knew Williams from her prior work, and was familiar with her attention to detail, her knowledge of computers, and her conscientiousness; he felt she would make an excellent employee.[95] Erickson testified he was the person, not Anderson, who named Williams as the person to be transferred.[96]

Anderson spoke with Williams about a possible transfer.[97] He told her the County was going to have a new security position at the courthouse that involved organizing the program and doing the badges and he thought she should apply for that position.[98] He also explained that he was downsizing the Department, and she was the only person that another department would take.[99]

Clark, Davis, and Tina Williams did not want Alyce Williams to leave.[100] While there is no evidence that Anderson decided to transfer Williams because she was a dwarf or "little person," in the environment of the Purchasing Department that became the rumor as the Department

---

[94] 6RR87-88.
[95] 6RR87-88.
[96] 6RR89.
[97] 2RR17
[98] 2RR17.
[99] 4RR60.
[100] 3RR115-116; 2RR82.

staff sought to reverse Anderson's decision.[101] Alyce Williams did not believe that her dwarfism was the reason for her transfer.[102] She never heard anything about Anderson allegedly having problems with little people until after this lawsuit was filed.[103]

Clark approached Anderson and told him that she did not think it was a good idea to transfer Alyce Williams.[104] Clark opposed the transfer because Alyce Williams did all the paperwork and was very good at her work; Anderson testified Clark told him she opposed the transfer because she was concerned about the workload.[105]

Davis testified that when she heard of Williams's possible transfer, she went to Clark and asked what she was going to do about it and volunteered to help.[106] She said that Clark declined her offer of assistance and said that she would handle it.[107] Clark never got back in touch with Davis.[108] Davis never followed up with Clark.[109]

---

[101] 2RR44-45; 8RR, Plaintiff's Ex. 3, question1; 8RR, Plaintiff's Ex. 7, question 1.
[102] 2RR30; 8RR, Plaintiff's Ex. 1, question 1; 8RR, Plaintiff's Ex. 2.
[103] 2RR44-45.
[104] 4RR62.
[105] 3RR151;4RR62.
[106] 5RR38.
[107] 5RR38-39.
[108] 5RR39.

One day when Clark was in Commissioner Bo Alfred's office discussing another matter, Alfred raised the issue.[110] Clark said she was worried about the workload if Williams was transferred and she did not feel that transferring Williams was a wise decision.[111] Clark testified that, during this conversation, Alfred asked if Anderson had a problem with "little people."[112] Alfred did not tell her who told him that, and she still does not know.[113] Clark testified that she let Alfred know that Anderson did not have a problem with little people, but that was a rumor she constantly heard.[114] Alfred said he would look into it.[115]

Clark subsequently told Tina Williams about the visit to Commissioner Alfred and said that she went to Alfred because she could not lose her secretary and "[h]e's the most radical person I know that could put a stop to this."[116] Tina Williams testified Clark told her she

---

[109] 6RR53.
[110] 4RR117;3RR114; 4RR12; 8RR, Plaintiff's Ex. 7, question 1.
[111] 3RR114,117.
[112] 3RR115.
[113] 4RR12.
[114] 3RR115-116.
[115] 3RR134.
[116] 2RR72; 8RR, Plaintiff's Ex. 3, question 1.

told Alfred that Anderson did not feel comfortable around Alyce Williams and that he used the "m" [midget] word.[117]

Clark, who testified that Anderson had no problems with little people and that it was absurd to think that he did,[118] testified that she told Tina Williams that Alfred asked whether Anderson was biased against little people and that she told Alfred that he was not but that she had heard rumors that he was in the office rumor mill.[119] Tina Williams testified that after meeting with Commissioner Alfred, Clark told her "I just sold my soul to the devil," and "I can't lose my secretary."[120] Clark admitted that she said something like she had "just sold my soul to the devil."[121]

Clark and Tina Williams were worried that word of Clark's meeting would get back to Anderson.[122] Williams's husband, Calvin, worried that his wife would get the blame.[123] The record includes conflicting testimony about a meeting between Calvin Williams and

---

[117] 2RR72; 8RR, Plaintiff's Ex. 3, question 1.
[118] 3RR116,160.
[119] 3RR131.
[120] 2RR72; 8RR, Plaintiff's Ex. 3, question 1.
[121] 3RR132.
[122] 2RR85-86;3RR135.
[123] 2RR86(Tina's testimony);3RR4-8(Calvin Williams);4RR67-71(Anderson).

16

Anderson in a truck in which Williams told (or didn't tell) Anderson about Clark's conversation with Commissioner Alfred about Alyce Williams and phone calls back and forth between Clark and Tina Williams and between Tina Williams and her husband, all in an effort to keep Calvin Williams from telling Anderson about Clark's meeting with Alfred.[124]

Clark also told Department employee Edwards about the meeting with Commissioner Bo Alfred.[125] Clark never told Edwards why Williams was being transferred, but Clark told her she went to Alfred because she didn't want Alyce to leave, that "we needed that position," and she was going to Alfred because he was the most radical person to stop it.[126]

Clark was unsuccessful in getting Anderson to change his mind about Williams's lateral transfer, and Williams was transferred effective December 1, 2007.[127] Her workload was reassigned.[128] Anderson met

---

[124] 3RR5-6;4RR67-68;2RR85-86;3RR134-135.
[125] 2RR112.
[126] 2RR112.
[127] 3RR151;4RR59(date).
[128] 3RR117.

with the Department's staff, including Alyce Williams, and told them that Williams was "going to a better place."[129] He said she was going to HR and be in charge of the security program.[130] He explained that he, a District Judge, and Alyce were the only three employees in the entire County to have the security clearances to make the badges.[131]

Tension had increased between Clark and Davis related to a loan that Davis made to Clark in April 2004.[132] The $1,265 loan to Clark was to have been repaid in the fall of 2004.[133] But Davis said it wasn't repaid.[134] At one point, Tina Williams went to Clark and told her the reason Davis did not like Clark was because Clark still owed Davis $300.00.[135]

Davis claimed she also discussed the loan with Clark because her husband was "bugging" her about the debt.[136] He would ask Davis when

---

[129] 5RR40.
[130] 5RR41.
[131] 5RR41.
[132] 3RR147.
[133] 4RR15;3RR107-09;5RR42-44.
[134] 5RR44.
[135] 3RR147-48.
[136] 5RR44.

Clark was going to pay the balance due.[137] Davis would tell Clark, "Deb, Don said to remember that it was a loan, not a gift."[138] Davis told Clark that she needed to pay it back because her husband was bugging her about it.[139]

Davis's husband decided he was going to sue Clark for the claimed balance of $285.00.[140] Davis thought if her husband sued Clark, it might place her job in jeopardy.[141] She thought it best to alert Anderson, and they had a meeting on December 6, 2007.[142] Davis claimed that the sole purpose of the meeting was to tell Anderson that her husband planned to sue for the $285.00 that had been past due for over three years.[143] Davis admitted that, during the meeting, she also told Anderson that Clark was talking behind his back to people in the Department and maybe even in the courthouse.[144]

---

[137] 5RR44.
[138] 5RR44.
[139] 5RR44.
[140] 5RR44 -45;3RR170.
[141] 6RR28.
[142] 5RR45-47;6RR22-23.
[143] 6RR24-25.
[144] 6RR23.

According to Anderson, Davis made numerous complaints about Clark and the last one she mentioned was that Clark owed her $300.[145] Davis testified that, during the meeting, Anderson's demeanor was calm. He asked her if she had anything else she wanted to say.[146]

After the meeting with Davis, Anderson talked to Clark, who said that Anderson "hammered" her pretty hard and told her that this bad debt should not have been brought into the workplace.[147] He told her to bring a certified check for $300.00 to work the next day.[148]

The next day Anderson met with Clark and Davis. According to Davis, Anderson handed her a money order for $300.00, had Davis sign a receipt, and instructed them both never to talk about this again.[149] According to Davis, Anderson said: "You are reprehensible. This is the reason that this department has such a terrible reputation."[150] Davis

---

[145] 4RR111.
[146] 5RR47;6RR26.
[147] 4RR33.
[148] 4RR19-20.
[149] 5RR50-51.
[150] 5RR51.

testified that neither she nor Clark said another word about this and neither did Anderson.[151]

Anderson testified he did not believe what Davis told him during the December meeting, including specifically her criticism of Clark.[152] He described Davis's allegations as upsetting.[153]

After the meeting, Anderson's initial thought was that this was not going to work, and he was going to fire Davis.[154] Specifically, he testified "Donna had come in and leveled a number of accusations against Deb Clark. And at that point I decided that it was no longer going to be a worthy working relationship, and I decided to terminate her at that point."[155] He decided to wait until after the holidays.[156] The termination was then delayed due to a health issue in Davis's family in January and then she was on vacation. March was the earliest time when she was readily available.[157]

---

[151] 5RR51.
[152] 4RR111-112.
[153] 4RR112.
[154] 4RR94.
[155] 4RR58.
[156] 4RR93-94.
[157] 4RR93-94.

Leading up to Davis's termination, Anderson was rethinking his decision and talked with Erickson and the District Attorney's office.[158] He finally decided to terminate her.[159] He accepts responsibility for the termination and does not blame the District Attorney's office, the Purchasing Board, HR, or Clark.[160]

Davis was fired on March 3, 2008.[161] Anderson testified that if Davis had not come to his office to talk about Clark she would never have been fired.[162]

Clark was not involved in the decision to terminate Davis; that was Anderson's decision.[163] Clark testified that she told Anderson not to fire Davis after the $300 was paid.[164] Anderson told her that "there would be no peace in the office."[165] Clark said that she told Anderson she could work with Davis.[166] She said she never wanted Davis fired—she wanted

---

[158] 4RR94-95.
[159] 4RR95.
[160] 4RR95-96.
[161] 3RR64.
[162] 4RR87.
[163] 3RR143;4RR76-79.
[164] 3RR167-68.
[165] 3RR170.
[166] 3RR171.

things to take their course and she anticipated that in the next few years Davis would retire.[167]

After her termination, Davis filed an EEOC claim alleging that she was discriminated against due to her sex and age, and in retaliation.[168] Department employees were interviewed by an HR employee and signed sworn statements.[169]

Davis sued. A jury awarded her over $1.3 million in damages for wrongful termination.[170] The County appealed, contending essentially that the evidence was legally insufficient to support the liability findings and no federally protected rights were violated.[171] The County also asserted in issue six that the December meeting was a legitimate reason for terminating Davis, an at-will employee.[172] And the County argued as part of issue seven that, if the evidence supported the age claim, Davis could recover "back wages and equitable relief only."[173] Finally, the County asserted in issue nine that the damages verdict was so outrageous

---

[167] 3RR144.
[168] 3RR120.
[169] 8RR, Plaintiff's Ex. 1,2,3,7,13; 8RR, Defendant's Ex. 13;6RR74-75.
[170] 7RR39-40;CR169.
[171] Appellant's Brief, pages 2-3.
[172] Appellant's Brief, page 26.
[173] Appellant's Brief, page 26.

it indicated the jury had failed to give the County a fair hearing on the evidence presented, that the damage verdict was the result of a run-away jury, and that there was no evidence to support the damages awarded for future mental anguish.[174]

The Court of Appeals correctly stated the nature of the case, with one exception. The County's explanation for the termination was the December meeting, and the jury found that Davis's speaking to Anderson at that meeting "in regards to the debt owed to her by Deb Clark" was a "substantial or motivating factor" for the termination.[175] The Court of Appeals did not address the reasons, other than age, the jury found were substantial or motivating factors.

The Court of Appeals held that legally sufficient evidence supported the jury's finding of age discrimination. The Court held that no evidence supported the jury's assessment of damages for future mental anguish and modified the judgment accordingly. On motion for

---

[174] Appellant's Brief, pages 3, 32-36;CR143.
[175] CR131, Question 7D.

24

rehearing, the Court held any other challenge to the award of damages was waived and the award did not concern immunity to suit.

# SUMMARY OF ARGUMENT

The jury found several reasons for the termination.[176] One was age.[177] Another was the reason given by the County: the December meeting.[178] When the record establishes that the employer would have terminated the employee in the absence of the impermissible motivating factor, a court may not award damages. The evidence is legally insufficient to establish that age animus was responsible for the termination. Damages should not have been awarded against the County.

Absent a statutory remedy permitting the recovery of the excessive amounts awarded by the jury, the County retains governmental immunity. To the extent of the remedies provided in the statute, Chapter 21 of the Labor Code is a limited waiver of governmental immunity to suit. The statute makes no mention of front pay as a remedy. If recoverable under the statute, front pay is an equitable remedy based on a finding – missing here – that reinstatement is not feasible. Alternatively, any award of compensatory damages should be capped.

---

[176] CR125,127,131.
[177] CR125.
[178] CR131, Question 7D.

All of the remaining claims Davis asserts require proof of but-for causation. The evidence is legally insufficient to establish that causation. The evidence establishes she would have been terminated anyway as a result of the December meeting. The County's reason for terminating Davis was a permissible reason under the law. Her statements at the meeting were not protected speech. Jefferson County requests that the Court reverse the judgment and render a judgment that Davis take nothing from Jefferson County.

## ARGUMENT

I. **The "motivating factor" standard requires proof that age animus was responsible for and a legal cause of the termination. Retirement comments, statements nearly a year before the termination, and a birthday-cake joke are not legally sufficient proof that age was a motivating factor in the termination.**

The evidence does not support the judgment against the County. The evidence is legally insufficient to support the finding that Davis's termination was the result of age discrimination. She was terminated because of a December meeting that had nothing to do with age.

The jury found several substantial or motivating factors for the termination, including the County's explanation: the December meeting.[179] The Court of Appeals did not address all the findings. The statutory claim of age discrimination requires proof "that the defendant's conduct did in fact cause the plaintiff's injury." *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, __U.S. __, 133 S. Ct. 2517, 2524 (2013). A causation analysis includes consideration of the existence and the extent of the effect of another factor in producing the result. *See Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332, 345 (Tex. 2014). A

---

[179] CR125,127,131(Question 7D).

take-nothing judgment should be rendered for the County because the evidence conclusively establishes that age discrimination was not a legal cause of Davis's termination.

**A.     The evidence is legally insufficient to establish that Davis's termination was the result of age discrimination.**

There are "two alternative methods of proof" in an age discrimination case under the state statute. *Mission Consol. Ind. School Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). One requires proof of pretext. *See id.*; *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). The other requires proof of "discriminatory intent via direct evidence of what the defendant did and said." *Garcia*, 372 S.W.3d at 634. The evidence in this case is legally insufficient under either method.

**1.     No pretext**

Davis's supervisor, Doug Anderson, testified that he decided to terminate Davis as a result of the December meeting.[180] That explanation for the termination was not a pretext for discrimination. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). The

---

[180] 4RR94.

jury did not find that the explanation was false. To the contrary, the jury found the December meeting to be a true reason for the termination.[181]

That finding by the jury was correct. Davis testified she thought her husband's threatened suit against Clark for failing to repay a personal loan would place her job in jeopardy.[182] That is why she decided to meet with Anderson in December.[183] Anderson testified that he did not believe what Davis told him during the December meeting, including specifically her numerous criticisms of Clark.[184] He described Davis's allegations as upsetting.[185] Davis testified he used a harsher word: "reprehensible."[186]

Anderson decided to terminate her employment.[187] He decided to wait until after the holidays.[188] The termination was then delayed due to

---

[181] CR131, Question 7D.
[182] 6RR28.
[183] 5RR 45-49.
[184] 4RR111-112.
[185] 4RR112.
[186] 5RR51.
[187] 4RR87, 94-95.
[188] 4RR93-94.

a health issue in Davis's family in January and then she was on vacation; March was the earliest time when she was readily available.[189]

Not only did Anderson testify and the jury find that Davis was fired as a result of the December meeting, Davis asserted on appeal that the meeting was a reason for the termination. In Appellee's Brief in the Court of Appeals, she cited her testimony concerning the events that occurred the day after her December meeting with Anderson and then stated:

> Rather than become angry at Clark for an egregious violation of common sense and basic management rules, Anderson took out his wrath on Davis. And, on March 3, 2008, he fired her.[190]

And, again, in response to the County's motion for rehearing, Davis acknowledged that the December meeting "was *a* true reason."[191]

The jury found that the December meeting where the disputed debt was discussed was a substantial or motivating factor for the

---

[189] 4RR93-94.
[190] Appellee's Brief, page 9.
[191] Response, page 12 (emphasis in Response).

termination.[192] The statute provides that "[i]n a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor," the court "may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay." TEX. LAB. CODE ANN. §21.125(b). The provision assumes that the plaintiff first provides legally sufficient evidence of an improper motive and "proves a violation." Here, the evidence is legally insufficient.

The Court of Appeals rejected the County's legal sufficiency challenge. But the court's causation analysis was wrong. Regardless of whether Davis and Clark actually could work together or whether Anderson made a poor management decision, the evidence conclusively establishes Anderson based his decision on the December meeting. The jury found the County's reason was true. The County's explanation was not a pretext. Davis did not meet the first method of proof—that of proving pretext.

---

[192] CR131, Question 7D.

## 2. No direct evidence

Nor did Davis satisfy the second method of proof—proof by direct evidence. As the Court of Appeals noted, to serve as direct evidence of discrimination, statements must be close in time to the employment decision and related to the decision. A defendant's comments that are not close in time, or that are not related to the decision, cannot be considered as direct evidence. *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592-93 (Tex. 2008) (per curiam).

The Court of Appeals cited *Reeves* as support for considering statements made nearly a year before the termination. But *Reeves* was a pretext case, not a direct evidence case. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Since *Reeves*, the Fifth Circuit continues to apply the same four-part test this Court does "when a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 n.4 (5th Cir. 2007); *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 442 n.5, 6 (5th Cir. 2012).

Statements "may serve as evidence of discrimination *only* if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, *and* (4) related to the employment decision at issue." *AutoZone, Inc.,* 272 S.W.3d at 593 (emphasis added). The only direct comments about Davis's age were at the initial one-on-one interview when Anderson began his new job as purchasing agent. These statements are too remote in time to be considered evidence that age was a motivating factor for the termination nearly a year later. *See generally Niu v. Revcor Molded Prods. Co.,* 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.). As the Court of Appeals suggests, the statements were not made in the direct context of her termination. The Court of Appeals erred in considering as evidence statements made nearly a year before her termination and not related to her termination.

The comments about retirement eligibility do not support the jury's finding. *See, e.g., Shorette v. Rite Aid of Maine,* 155 F.3d 8, 13 (1st Cir. 1998); *Barth v. Hoffmann-La Roche, Inc.*, No. 05-01-00302-CV, 2002 WL 1225684, at *4 (Tex. App.—Dallas June 6, 2002, no pet.) (not

34

designated for publication). Retirement comments occur as a legitimate part of a workplace environment. Davis was approaching eligibility for retirement and had discussed retirement with at least one co-worker.[193] An employee considering retirement is not discriminated against because she is treated as considering retirement. A supervisor who mentions the future retirement of an employee and the availability to that employee of information at routinely scheduled County meetings comments on retirement, not age.

Davis testified that she interpreted those repeated comments as age-related.[194] From their statements, apparently others at the meetings did not make that assumption.[195] Davis's subjective interpretation is not proof, and ambiguous statements indirectly related to age are not direct evidence. *See M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 25 (Tex. 2000) (per curiam); *AutoZone,* 272 S.W.3d at 592-93.

---

[193] 2RR32:14-20;38:4-13;3RR144:1-4;6RR42-43.
[194] 5RR56-57.
[195] 8RR Plaintiff's Ex. 1, question 5; Plaintiff's Ex. 3, question 4; Plaintiff's Ex. 7, question 2; Defendant's Ex. 1, question 5.

The Court of Appeals cites Alyce Williams's testimony concerning Anderson's first staff meeting. That meeting occurred almost a year before the termination. *See generally Niu,* 206 S.W.3d at 731. Tina Williams's statement, also cited by the Court of Appeals, does not indicate the dates of the staff meetings to which the statement refers.[196] Her statement does indicate, however, that the comments included references to information meetings scheduled by the County.[197] Those retirement comments were not related to or shown to be close in time to the termination decision.[198]

The Court of Appeals cites a birthday cake joke as an indirect age-related comment. A reasonable juror would recognize the remark as an attempt at humor. *See City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005) (reasonable juror standard); *AutoZone,* 272 S.W.3d at 592-93. Davis admits this could be "laughed off as good-natured joking," but she saw this as an instance of intolerance coming from Anderson.[199] A

---

[196] 8RR, Plaintiff's Ex. 3, question 5.
[197] 8RR, Plaintiff's Ex. 3.
[198] 8RR, Plaintiff's Ex. 3.
[199] Appellee's Brief, page 6 n.3.

subjective belief that a joke relates to a termination decision is not direct evidence. *See Willrich*, 28 S.W.3d at 25.

Neither method of proof was satisfied. The evidence is legally insufficient to support a finding that Davis was terminated due to age discrimination. The Court should render judgment that Davis recover nothing on the age claim.

### 3. A permissible reason

Davis argues the December meeting was not a permissible reason for the termination and therefore cannot be considered in the analysis of her age claim. She claims her speech regarding the debt was protected speech. But it was not. The County did not terminate Davis for an impermissible reason.

"The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). The December 2007 meeting had nothing to do with public official misconduct. The United States Supreme Court has explained that "government offices could not function if every employment decision became a constitutional matter." *Connick*, 461 U.S. at 143. In order for the December meeting to

be an impermissible reason for termination, Davis would have had to prove that (1) she spoke as a citizen rather than as a public employee; (2) she spoke on a matter of public concern to the community; and (3) her interest in speaking on the matter of public concern outweighed those of the County in maintaining efficiency. *Graziosi v. City of Greenville Mississippi,* 775 F3d 731, 735 (2015).

Davis met with Anderson in December because her husband intended to sue Clark for nonpayment of a personal loan and she thought this would place her job in jeopardy. This was a dispute between two employees under Anderson's supervision.[200] Anderson testified to other job-related criticisms Davis made of Clark at the meeting; Davis admitted raising a job-related criticism of Clark. As addressed further in issue five, the evidence is legally insufficient to support the jury's findings in response to questions four, five, and six that the December meeting concerned matters of political, social or other concern to the community, were matters of public concern, were not purely job-related, and did not disrupt the efficiency of the office. The December meeting

---

[200] 5RR45-49

did not involve matters of political, social, or other concern to the community. They involved Anderson's management responsibilities for the Department.

The termination was not a violation of the Constitution. The Supreme Court has explained the matter in this way:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Connick*, 461 U.S. at 146. The Court has explained that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006).

Activities "undertaken in the course of performing one's job," therefore, are not protected speech. In *Williams v. Dallas Indep. Sch.*

*Dist.*, 480 F.3d 689, 693 (5th Cir. 2007), the Court analyzed the case-law and concluded:

> These cases, when viewed as a whole, distinguish between speech that is "the kind of activity engaged in by citizens who do not work for the government," *Garcetti,* 126 S.Ct. at 1962, and activities undertaken in the course of performing one's job. Activities undertaken in the course of performing one's job are activities pursuant to official duties. *Id.* at 1960.

Davis's statements at the December meeting were not protected by the First Amendment because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti,* 547 U.S. at 421–22; *see Lane v. Franks*, __U.S. _, 134 S.Ct. 2369, 2379 (2014); *Gibson v. Kilpatrick*, 773 F.3d 661, 666-70 (5th Cir. 2014) *petition for cert. filed*, (U.S. Mar. 13, 2015)(No. 14-1112).

Nor did her statements touch upon a matter of public concern. She was speaking about a personal loan she had offered to make to her supervisor and her husband's soon-to-be-filed lawsuit. These were purely private concerns. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th

Cir. 2008); *Turner v. Perry*, 278 S.W.3d 806, 816 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

And finally, any interest in expressing the concern was outweighed by the County's interest in promoting the efficiency of the public services the County was attempting to perform through its employees in the Department. *See id; see also Graziosi,* 775 F3d at 740-41. Anderson acted within his discretion in concluding that the workplace could not function as an efficient environment with her continued employment.

The First Amendment does not empower Davis to "constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154). Her statements at the December meeting were not constitutionally protected and her termination as a result of the meeting was not a constitutional violation. As a matter of law, the County's reason for the termination was a permissible reason.

**B.     The record establishes that the termination would have occurred in the absence of an impermissible motivating factor. The December meeting, not any impermissible factor, was the cause of the termination. On this record, damages cannot be awarded against the County.**

A no-evidence review includes a determination of those facts conclusively established. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814-15 (Tex. 2005). The record conclusively establishes that Davis was terminated because of the December meeting and was terminated for that reason alone.[201]

Furthermore, the age-discrimination statute does not anticipate the recovery of damages when the employer demonstrates the termination would have occurred in the absence of the impermissible motivating factor even if age was also a motivating factor. TEX. LAB. CODE ANN. §21.125(b). Because the record establishes as a matter of law Davis was terminated for a permissible reason, and would have been terminated for that reason alone, damages are not recoverable under the statute.

---

[201] 4RR87.

42

The County did not plead Section 21.125(b).[202] But that is not dispositive of the issue of plaintiff's entitlement to damages on this record. *See* TEX. R. CIV. P. 67. Plaintiff requested and obtained a jury finding that in legal effect establishes she would have been fired for a permissible reason. The issue was tried by consent. Moreover, as part of the pretext and causation analysis, the issue concerns the legal sufficiency of the evidence to support a causal link between age discrimination and Davis's entitlement to damages against the County and implicates the County's immunity to suit for damages. *See generally San Antonio Water Sys. v. Nicholas*, __ S.W.3d__, No. 13-0966, 2015 WL 1873217 (Tex. Apr. 24, 2015) (legal sufficiency review and immunity to suit). Conclusive evidence is given effect in a legal sufficiency review. The evidence conclusively establishes the December meeting was the reason for the termination.

## 1. Trial by consent

When a plaintiff requests and obtains a jury finding that in legal effect establishes she would have been terminated in the absence of an

---

[202] 4RR87.

impermissible motivating factor, the entitlement-to-damages issue has been tried by consent. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009); *Sage St. Assocs. v. Northdale Const. Co.*, 863 S.W.2d. 438, 445-46 (Tex. 1993). In *Ingram*, this Court explained that "[w]hen both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived." *Ingram*, 288 S.W.3d at 893. The jury verdict should be given the same effect it would be given had the County pleaded that Davis was fired as a result of the December meeting. If that reason is a permissible one, and it is, the County has established that she would have been terminated anyway for a permissible reason. Under the circumstances, damages are not recoverable as a remedy whether or not age was a motivating factor. TEX. LAB. CODE ANN.§ 21.125(b).

### 2. Cause-in-fact

The jury was instructed that the plaintiff had to prove cause-in-fact and proximate cause to recover damages. In construing a different statute, this Court has noted: "we cannot conceive of causal connection

analysis without consideration of cause in fact." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 224 (Tex. 2010).

In the court's charge, cause-in-fact was defined as meaning that defendant's conduct must have played a "substantial part" in causing the injury, and proximate cause was defined as requiring the damages be foreseeable.[203] The jury was also instructed that to prove Davis's speech was a "substantial or motivating factor" meant that plaintiff must prove it was "a substantial consideration that made a difference in or influenced the Defendants'(s') decisions."[204]

The correctness of the jury instructions "ultimately has no bearing on whether the trial court had jurisdiction." *San Antonio Water Sys.*, 2015 WL 1873217, at *5. If the instructions are insufficient as a matter of law to define cause-in-fact, proximate cause, substantial factor, or motivating factor, this Court is not bound by how those terms were defined in the jury charge in a suit against a governmental entity. *See id.* "Sovereign immunity can be waived only by statute." *Id.*

---

[203] CR123-24.
[204] CR123.

When specifically asking the jury about age in Question 1, the court instructed the jury in the charge that "a motivating factor" means that age was "a reason" for the termination.[205] Otherwise, the court charge used the terms "substantial" and "motivating" interchangeably.[206] Those terms come from *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), a case where, as here, a public employee claimed retaliation for the exercise of a First Amendment right to free speech.

The Court in *Mt. Healthy* held that the plaintiff had the initial burden "to show that his conduct was constitutionally protected, and that this conduct was 'a substantial factor' or to put it in other words, that it was a 'motivating factor'" in the defendant's decision. *Mt. Healthy*, 429 U.S. at 287. The burden then shifted to the defendant to show that it would have made the same decision in the absence of the protected conduct. *Id.* Notably, the Supreme Court used "substantial factor" and "motivating factor" as interchangeable terms. *Id.* at 287.

---

[205] CR125.
[206] CR131.

The charge in this case used the terms "substantial" and "motivating" as though they mean the same thing.[207] And they should. With her age claim, regardless of remedies available, the plaintiff initially is required to show that an impermissible reason was a motivating factor—or in other words, a substantial factor—in the termination decision. She did not meet her burden. But even if she had, the December meeting—a permissible reason—was a substantial factor for the termination.

This Court has defined the term "substantial factor" in other contexts. In *Crump,* the Court explained that "substantial" denotes that, to rise to the level of cause in a legal sense, "the act or event must be such that reasonable jurors would identify it as being actually responsible for the ultimate harm." *Crump*, 330 SW3d at 224. In *Bostic*, this Court applied a "substantial factor" test for causation in a mesothelioma case. *Bostic v. Georgia-Pacific Corporation*, 439 SW3d 332 (Tex. 2014). The Court explained that "[w]hile but for causation is a core concept in tort law, it yields to the more general substantial factor

---

[207] *See, e.g.,*CR127,131.

causation in situations where proof of but for causation is not practically possible or such proof otherwise should not be required." *Id.* at 344.

Substantial factor and but-for are "overlapping concepts" and "application of those tests usually lead to the same result." *Id.* at 342. This Court has noted that in some situations an actor's conduct is not a but-for cause "because another force would have caused the harm anyway." *Id.* at 345 A "substantial factor" finding means the termination would have resulted from that factor alone. *Id* at 345. Because the evidence conclusively establishes and the jury has found that the December meeting was a substantial factor—or a motivating factor—damages are not recoverable in her age claim or, as is addressed further in issue five, under her other claims. The termination would have resulted from the December meeting alone.

### 3. Causation in a pretext case

As part of Davis's proof in her age claim, in the absence of direct evidence, she was required to establish that the County's reason for the termination was a pretext. But as the County argued in its brief in the Court of Appeals,

> It is interesting to note that at the urging of Plaintiff's attorney in closing argument the jury found that the Plaintiff speaking to Doug Anderson about the debt owed to her by Deb Clark was a substantial or motivating factor in her termination. (Jury Question No. 7). There was absolute agreement in the record as to that fact. If that speech then is not protected speech, and it most surely is not, then the jury has agreed to a legitimately based explanation for the termination of this at-will employee.[208]

In legal effect, the jury's finding in response to question 7 establishes a "legitimately based explanation for the termination."[209]

In *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex. 2001), the Court considered the standard of causation in a pretext age discrimination case under the state statute, Texas Labor Code section 21.125. Stating that "[i]n the absence of meaningful Supreme Court authority, we therefore enforce the statute's plain meaning[,]" this Court held that the "plain meaning of this statute establishes 'a motivating factor' as the plaintiff's standard of causation in a TCHRA unlawful employment practice claim, regardless of how many factors influenced the employment decision." *Id.* at 480.

---

[208] Appellant's Court of Appeals Brief, p. 26.
[209] *Id.*;CR131.

After *Quantum*, the United States Supreme Court wrote on the issue of causation under federal age discrimination law. In *Gross,* the Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 180 (2009). The Court added: "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one of the motivating factors in that decision." *Id.*

The Court reiterated its holding in *Gross* in its opinion in *Nasser,* stating that "[i]n *Gross*, the Court concluded that the ADEA requires proof that the prohibited criterion was the but-for-cause of the prohibited conduct." *Univ. of Texas Southwestern Medical Center v. Nassar,* __U.S. __, 133 S.Ct. 2517, 2523 (2013). In *Nassar,* the Court explained that causation-in-fact is a standard requirement of any tort claim, including "federal statutory claims of workplace discrimination." *Id.* at 2524-25.

The Court in *Gross* noted that a federal age-discrimination claim proceeds under a different statute than other status-based discrimination claims. *Gross,* 557 U.S. at 173-74. Chapter 21 of the Labor Code, however, governs an age claim in the same manner as it does other status-based discrimination claims. TEX. LAB. CODE ANN. § 21.125.

The Fifth Circuit has noted that this Court has not revisited the standard of proof since *Gross*, and that the law apparently remains unsettled under Texas law. The Fifth Circuit explained:

> In light of *Gross,* one Texas court of appeals has noted that Texas law is "unsettled" with respect to whether or not the "but for" standard applies to pretext-based age-discrimination claims under the TCHRA. *Hernandez,* 350 S.W.3d at 284 (citing *Houchen v. Dallas Morning News,* No. 3:08–CV–1251–L, 2010 WL 1267221, at *11–12 (N. D. Tex. Apr. 1, 2010)). The *Hernandez* court determined that it does not, noting that the statutory text of the TCHRA, unlike the ADEA, expressly includes the "motivating factor" standard. *Id.* at 285; *see* Tex. Lab. Code Ann. § 21.125(a). We reached the same conclusion in an unpublished opinion. *Jackson v. Host Int'l, Inc.,* 426 Fed. Appx. 215, 219 n. 2 (5th Cir.2011) (unpublished) (per curiam). Although we note the issue here, we need not address it because Reed's evidence fails to create a genuine issue of material fact under either causation standard.

*Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 n.3 (5th Cir. 2012).

A reasonable application of the state statute in a pretext case, a case in which there is no direct evidence of discrimination, would require that the age discrimination be the but-for cause in the employer's decision. But-for causation is, for example, the understood causation standard in the burden-shifting *Mt. Healthy* cases. *See Hartman v. Moore,* 547 U.S. 250, 260 (2006).

In this case, as in *Reed*, Plaintiff's claim fails under either a "but for" or "motivating factor" causation standard. Furthermore, Davis has affirmatively established through the jury's finding in answer to question 7 that she would have been terminated for a permissible reason regardless of any other factor. Davis is not entitled to a recovery of damages from Jefferson County.

## II.   **Davis was not entitled to recover front pay.**

"[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843,

846 (2001). The trial court awarded Davis $356,955 in front pay.[210] The Court of Appeals affirmed that award. That award was erroneous in the first instance because front pay is not recoverable under Chapter 21 of the Texas Labor Code.

## A. Front pay is not recoverable under Chapter 21 of the Texas Labor Code.

In rejecting the County's argument that Davis can recover "back wages and equitable relief only" and not front pay, the Court of Appeals cited sections 21.2585(a) and (d) of the Texas Labor Code. *Jefferson County v. Davis,* No. 14-13-00663, 2014 WL 4262184 *8 (Tex. App.— Houston [14th Dist.] Aug. 28, 2014, pet. filed) (memorandum opinion). That cite suggests that the court of appeals concluded front pay is recoverable as compensatory damages. That is not the case under federal law, and other Texas courts of appeals have followed the federal law.

In *Pollard,* the United States Supreme Court held that under Title VII front pay does not constitute an element of compensatory damages. *Pollard,* 532 U.S. at 852. The Court explained that front pay is recoverable as equitable relief and "front pay is simply money awarded

---

[210] CR155 (future pecuniary loss and future loss of benefits).

for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Id.* at 846.

Subsequently, several Texas courts followed that reasoning and concluded that future lost earnings awards are not compensatory damage awards and so are not subject to the caps under the state statute. *See, e.g., San Antonio Water Sys. v. Nicholas*, 441 S.W.3d 382, 401-02 (Tex. App.—San Antonio 2013), *rev'd on other grounds,* __S.W.3d__, No. 13-0966, 2015 WL 1873217 (Tex. Apr. 24, 2015); *Hoffman-La Roche, Inc. v. Zeltwanger,* 69 S.W.3d 634, 653 (Tex. App.—Corpus Christi 2002), *rev'd on other grounds*, 144 S.W. 3d 438 (Tex. 2004). Following federal authority, Texas courts consider front pay to be equitable relief available under section 21.258(b) of the Texas Labor Code. *Nicholas,* 441 S.W.3d at 404 (citing cases).

But the language of the federal statute construed by the U.S. Supreme Court differs significantly from the language of the state statute with respect to equitable relief. The federal statute gives federal courts broad authority to grant equitable relief, stating that "the court may enjoin the respondent from engaging in such unlawful employment

practice, and order such affirmative action as may be appropriate, which may include, *but is not limited to*, reinstatement . . . or *any other equitable relief* as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1) (emphasis added).

The Texas statute states that a court may "order additional equitable relief as may be appropriate," but then lists the specific types of "additional equitable relief" available under the statute. TEX. LABOR CODE ANN. § 21.258(a)(2), (b). Front pay is not included in the list of additional equitable relief contained in section 21.258. Moreover, unlike the federal statute, the state statute does not include the phrases "but is not limited to" and "any other equitable relief." *Compare* TEX. LAB. CODE ANN. § 21.258 *with* 42 U.S.C. § 2000e-5(g)(1) (2014). If the Texas Legislature had intended front pay to be recoverable, front pay would have been listed as one of the remedies available under section 21.258(b), or the Legislature would have included phrases from the federal statute such as "any other equitable relief" and "but is not limited to."

Unlike the federal statute, then, the state statute does not permit the courts to craft additional equitable relief not listed in the statute. Front pay is not mentioned in the Texas statute or authorized by the language of the statute and so any award in this case must be reduced by the $356,955 awarded as front pay.

**B.     If front pay is an available equitable remedy under Chapter 21, it is not recoverable in this case as a matter of law.**

If this Court finds that front pay is an available equitable remedy, then front pay should be limited to a reasonable period sufficient for a plaintiff "to reestablish her place in the job market." *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 889 (3d Cir. 1984) ("[F]ront pay: that is an award for a reasonable future period required for the victim to reestablish her rightful place in the job market."). Front pay is not recoverable as a matter of law based on the evidence in this case.

The judgment awards damages as though the termination of Davis's employment with the County would have prevented her from ever reestablishing her place in the job market.[211] But that is not

---

[211] CR155

supported by the evidence. Davis did not show that she was rendered permanently unemployable as a result of the termination, and she did not obtain a finding at trial that reinstatement or reemployment was not feasible. *See Wal-Mart Stores, Inc. v. Davis,* 979 S.W.2d 30, 45 (Tex. App.—Austin 1998, pet. denied) ("To recover front pay, a plaintiff must show that reinstatement is not feasible as a remedy.").

The economic damage award is based on the speculative testimony of Davis's nephew, who lacked knowledge concerning the retirement program or salary policies at the County.[212] His calculations assume a guaranteed job through age 65 or 70, allowing the jury to guess how long Davis would remain employed, though she was an at-will employee considering retirement; the jury's use of the age 70 is based on speculation.[213] The witness's calculations unreasonably assumed no earnings from any other source of employment.[214] *Pollard*, 532 U.S. at 849-854.

---

[212] 4RR128-130.
[213] 4RR121-130.
[214] 4RR121-130;8RR Plaintiff's Exhibit 14.

Davis's nephew also assumed annual three percent increases in salary without checking publicly available data to see what the actual increase had been historically.[215] At first he offered no testimony on present value.[216] After cross-examination on the issue, he was called again the next day by Davis's counsel, and then testified that the damages could be reduced to present value using a one percent rate of return, though he did not check the historical rate of return on investment and did not modify his damage chart.[217] His opinion is baseless speculation. Baseless opinions will not support a judgment even when admitted without objection. *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). The award is not supported by legally sufficient evidence.

Davis died shortly after the judgment was signed.[218] Reinstatement as a remedy does not survive, so logically a claim for front pay in lieu of reinstatement should not survive. *But see generally*, *Estate of Martineau,* 203 F3d 904, 912-13 (5th Cir. 2000)(referencing

---

[215] 4RR126-127;6RR56-57.
[216] 4RR126-131.
[217] 6RR56-57; 8RR Plaintiff's Ex. 14, 17.
[218] Appellant's Brief, page1, n.1.

death); *see also* TEX. R. APP. P. 7.1. But regardless of the survivability of the remedy, the front pay award in this case is not supported by the evidence, is excessive and is not appropriate, reasonable, or equitable. Whether front pay is considered equitable relief or compensatory damages, on this record the judgment grants a remedy against the County in excess of that permitted by the statutory waiver of immunity to suit.

**III. Several federal courts and a Kentucky appellate court have determined that the federal statutory damages cap is an integral part of the statutory scheme and is not an affirmative defense that must be pleaded. The Court of Appeals erred by holding that the state statutory cap is an affirmative defense.**

If the Court concludes front pay is recoverable as compensatory damages, the damages are subject to the $300,000 cap under TEX. LAB. CODE ANN. § 21.2585 (a), (d). The cap automatically applies because it is an integral part of the statutory scheme under which Davis sought damages. *See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.32 (5th Cir. 2002); *Oliver v. Cole Gift Centers., Inc.,* 85 F. Supp. 2d 109, 111-12 (D. Conn. 2000).

The Court of Appeals held the County waived the caps and challenges to the damages by not pleading or arguing the caps or damage findings before the motion for rehearing. The court cited opinions by other courts of appeals, and two opinions by this Court, one distinguishing between immunity to suit and immunity to liability, and another referring to a damages cap in another statute generally as a liability limitation.

But the caps and other limitations on remedies in the discrimination statutes are an integral part of the statutory structure defining the power of a court to remedy discrimination. *Giles*, 245 F.3d at 491 n.32 (5th Cir. 2001). Although not reaching the issue itself, the Fifth Circuit noted another court had "reasoned persuasively" that the federal statute's cap is not an affirmative defense but instead is "an integral part of the statutory scheme under which the plaintiff sought damages." *Id.* And two federal district courts in Texas have held that the caps in the federal statute are not affirmative defenses that must be pleaded. *See, e.g., Soto v. LCS Corrections Servs., Inc.*, No. 2:12-CV-130, 2013 WL 4012627, at *7 (S.D. Tex. Aug. 5, 2013); *Paris v. Dallas*

*Airmotive, Inc.*, No. Civ.A.3:97CV0208-L, 2001 WL 881278, at \*5 (N.D. Tex. July 30, 2001); *see also Ortega-Guerin v. City of Phoenix*, No. CV 04-0289-PHX-MHM, 2006 WL 2403511, at \*1-2 (D. Ariz. Aug. 14, 2006) (same); *Oliver*, 85 F. Supp. 2d at 112 (same); *Core Med., LLC v. Schroeder*, No. 2009-CA-000670-MR, 2010 WL 2867820, at \*4-5 (Ky. Ct. App. July 23, 2010) (unpublished) (same).

The Fifth Circuit has explained also that the federal government retains sovereign immunity for damages not expressly provided for by statute. *See Smith v. Office of Personnel Mgmt.*, 778 F.2d 258, 261 (5th Cir. 1985). Chapter 21 should be applied in a similar way as the federal statutes. *See* TEX. LAB. CODE ANN. § 21.001; *see also Hoffmann-La Roche*, 144 S.W.3d at 445-46 (Chapter 21 is modeled after federal law and "federal case law may be cited as authority in cases relating to the Texas Act").

Because the caps and equitable relief provided in the statute are integral parts of the state statutory scheme, they should control the extent of the waiver of the County's immunity to suit as well as liability. *See Mission Consol. Ind. School Dist. v. Garcia*, 372 S.W.3d 629, 637

(Tex. 2012); *State v. Lueck,* 290 S.W.3d 876, 881 (Tex. 2009). The elements of a claim against a governmental entity are jurisdictional; the failure to prove a claim also means the court has no jurisdiction. *Univ. of Houston v. Barth*, 403 S.W.3d 851, 854-57 (Tex. 2013); *Lueck,* 290 S.W.3d at 881 (Tex. 2009). Similarly, the limitations on relief in the statute should be treated as restricting a court's jurisdiction or power to award relief against a governmental entity.

A governmental entity can raise immunity to suit at any time because it implicates the trial court's subject matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012); *Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 530 (Tex. 2012). The Court of Appeals erred in ruling the remedy and cap challenges were waived and in affirming an award of damages other than back wages.

A judgment that grants a remedy against a governmental entity not expressly provided for by the statute also grants a remedy in excess of that permitted by the statutory waiver of immunity to suit. *See Garcia*, 372 S.W.3d at 637; *see also Smith*, 778 F.2d at 261. If this Court

concludes that front pay is recoverable in this case as compensatory damages, then the compensatory damages must be capped at $300,000.

**IV. The Court of Appeals erred in ruling that the County waived its challenge to the award of front pay and to the excessiveness of the damage award.**

Rule 38.1(f) provides that "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX. R. APP. P. 38.1(f). Rule 38.9 provides that substantial compliance with the briefing rules is sufficient, and that the courts of appeals can require defects be corrected if necessary for a satisfactory submission of the case. "Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver. Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (citation omitted). The Court of Appeals correctly determined that Jefferson County challenged the lack of any evidence to support the award of $500,000 for future mental anguish, and the Court ruled correctly that there was no evidence of future mental anguish. *Davis*, 2014 4262184, at *9.

The County also challenged in issue nine the verdict as outrageous and excessive, and suggested the verdict was the result of a run-away jury.[219] The County argued that the "evidence in this case simply fails to support the award of the jury on which the judgment is based."[220] The County argued under issue seven, asserting there was no evidence of discrimination, that if supported by the evidence the jury's finding "would entitle Plaintiff to a recovery of back wages and equitable relief only."[221] The Court of Appeals should have considered the challenges and required additional briefing if necessary. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). If this Court does not render a take-nothing judgment in favor of the County, the Court should remand the case to the Court of Appeals for consideration of the challenges to the excessiveness of the damages and to the entitlement to recovery of damages.

---

[219] Appellant's Brief, pages 32-36.
[220] Appellant's Brief, page 36; *see also* 1CR143.
[221] Appellant's Brief, page 26.

**V. The Court should reverse and render a take-nothing judgment on all claims or, alternatively, remand the cause to the Court of Appeals for consideration of those issues not decided by that court.**

In addition to her age discrimination claim, Davis claimed that the County retaliated against her for opposing the transfer of Alyce Williams and for opposing age or retirement comments, and violated her First Amendment speech rights under the U.S. Constitution in various ways.

**A. But-for causation**

Davis's claims require proof of but-for causation. The evidence is legally insufficient to support causation on each of her claims. The evidence establishes her termination would have occurred anyway as a result of the December meeting alone.

**1. The *Mt. Healthy* rule**

No liability can be imposed on an employer in free speech claims like those asserted here when the employee would have been terminated anyway. As the Supreme Court has explained:

> It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.

*Hartman v. Moore,* 547 U.S. 250, 260 (2006). The *Mt. Healthy* rule is that a public employee who is terminated for engaging in constitutionally protected conduct is not entitled to any relief if the employer would have terminated her anyway. *Mt. Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. 274, 285-86 (1977); *Scott v. Flowers,* 910 F.2d 201, 209 (5th Cir. 1990); *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 Fed. Appx. 447, 455 (5th Cir. 2013) (unpublished). The proof requirement is but-for causation. *Hartman,* 547 U.S. at 260.

The evidence is legally insufficient to support the jury findings in response to question 7 parts A, B, and C.[222] The evidence is legally insufficient to establish that but for the exercise of protected speech she would not have been terminated. Rather, the evidence conclusively establishes that she would have been terminated anyway as a result of

---

[222] 1CR131

the December meeting. The Court should reverse the judgment and render a take-nothing judgment on all of Davis's free speech claims.

### 2. The retaliation claims

In response to Questions 3 and 7C, the jury found Davis was terminated for opposing the transfer of Alyce Williams. And in response to question 7B, the jury found she was fired for opposing remarks about her age or retirement. The findings are not legally sufficient to support a retaliation claim, and the evidence is legally insufficient to support them.

There is no evidence that the transfer was a discriminatory practice. Alyce Williams did not think it was, and Erickson explained he made the decision that Williams would be the employee transferred because he viewed her as an excellent employee. Rumors and speculation do not constitute legally sufficient evidence. And the evidence is legally insufficient to support a retaliation claim for the reasons explained further in connection with her speech claims.

The evidence is also legally insufficient to prove but-for causation. "The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e–3(a) must establish that his or

67

her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 133 S. Ct. at 2534. That is also the causation standard under the Texas Labor Code for a retaliation claim. In *Navy v. College of the Mainland*, the court of appeals explained:

> [U]nlike claims for discrimination subject to section 21.125(a), which require just a "motivating factor" causation standard, retaliation claims under section 21.055 are subject to the traditional "but for" measure. *Ptomey v. Tex. Tech Univ.,* 277 S.W.3d 487, 497 & n. 11 (Tex. App. --Amarillo 2009, pet. denied) (relying on *Pineda,* 360 F.3d at 488–89); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ⸻ U.S. ⸻, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013) (discussing the causation requirement for a retaliation claim brought under Title VII). In other words, the plaintiff must prove that he would not have suffered an adverse employment action "'but for' engaging in the protected activity." *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 685 (5th Cir.2001); *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

*Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2013, no pet.)

The evidence is legally insufficient to establish that but for her opposition to the transfer of Alyce Williams, or to age or retirement

remarks, she would not have been terminated. Because the record establishes Davis would have been terminated anyway even in the absence of any protected speech or conduct, the Court should reverse the judgment and render a take-nothing judgment on her retaliation claims.

## B. Analysis of First Amendment claims

Davis's free speech claims fail for other reasons as well. "To establish a First-Amendment, free-speech retaliation claim under § 1983, a public employee must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) her speech was a substantial or motivating factor in the defendant's adverse employment action." *Burnside v. Kaelin,* 773 F.3d 624, 626 (5th Cir. 2014). And, as discussed above, even if she makes that showing, a public employee who is terminated for engaging in constitutionally protected conduct is not entitled to any relief if the employer would have terminated her anyway. *Scott,* 910 F.2d at 209.

Whether an employee's speech involves a matter of public concern and is protected speech is a legal question for the Court to decide. *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987). *Connick v. Myers*, 461, U.S. 138, 148 n.7 (1983). Only "factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same employment decision in the absence of the protected speech" are for the jury. *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001).

"Matters of public concern are those which can 'be fairly considered as relating to any matter of political, societal, or other concern to the community.'" *Id.* (quoting *Connick*, 461 U.S. at 146). The mere fact that the subject of the speech is one in which the public may have a great interest is "of little moment." *Terrell v. Univ. Texas Sys. Police,* 792 F.2d 1360, 1362 (5th Cir. 1986). As the Court noted in *Connick,* "to presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—

would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149

The Court added: "While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require that a public office to be run as a roundtable for employee complaints over internal affairs." *Id.* "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

Therefore, "[w]hen an employee speaks purely on a matter of personal interest, clearly no constitutional protection attaches." *Chavez v. Brownsville ISD*, 135 Fed. Appx. 664, 669 (5th Cir. 2005) (citing *Benningfield v. City of Houston*, 157 F3d 369, 375 (5th Cir. 1998)). Similarly, speech pertaining to internal personnel disputes and working conditions will not usually involve a public concern. *Branton*, 272 F.3d at 739. Speech that consists exclusively of criticisms of the competence

of the speaker's supervisor is not of public concern. *Wilson v. UT Health Center*, 973 F2d 1263, 1269 (5th Cir. 1992).

To determine whether an employee's speech addresses a matter of public concern, courts examine the content, form, and context of a given statement. *Connick*, 461, U.S. at 147-48. This requires an analysis of each of the four events where she alleged her rights were violated.

## C.    Davis's First Amendment claims

Davis alleged four events where she claimed her rights were violated.

### 1.    Meeting with Commissioner

Davis obtained jury findings that when Davis spoke to Commissioner Domingue about the appointment of the Purchasing Agent, she spoke as a citizen on a matter of public concern, the speech was not purely job-related, the speech did not disrupt the work-place, and that speech was a substantial or motivating factor in Davis's

termination.[223] The evidence is legally insufficient to support the jury's findings.

There is no evidence that Davis's meeting with Domingue before Anderson was appointed Purchasing Agent was causally related to Davis's termination by Anderson approximately a year later. In *Burnside v. Kaelin,* 773 F.3d 624, 629 (5th Cir. 2014), Burnside complained that his First Amendment rights of freedom of speech and association were violated when he was fired more than thirteen months after his protected activities had occurred. *Id.* The court noted that Burnside's complaint alleged no facts linking the two events. The court stated that, "[w]ithout such facts, we cannot plausibly infer that the termination was causally related to Burnside's First-Amendment conduct" and that, "without a causal link between the termination and Burnside's protected activities, there can be no claim of a constitutional violation as a matter of law." *Id.*

No evidence connects Davis's meeting with Domingue before Anderson was hired with her termination a year later. The meeting occurred while Clark was serving as Interim Purchasing Agent. There is

---

[223] CR128-31.

73

no evidence that Anderson knew about Davis's meeting with Domingue or that the meeting played any role in his decision to terminate her.[224] *See Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 603-05 (5th Cir. 2001). Davis failed to show that the meeting motivated the termination.

Although the jury found that the Domingue meeting involved a matter of public concern, that was a question for the court, not the jury. *Connick,* 461 U.S. at 147 n7. Assuming that Davis's attendance at a meeting where someone else (Williams) discussed their desires for the characteristics of the next Purchasing Agent constituted "speech," it was not protected speech. According to all Department personnel, it was perfectly proper for Department employees to talk to the commissioners, including Domingue, who was on the Department Board.[225] Davis and Williams hoped the Board would select a person of character, a leader, because "the ongoing drama in the department was difficult."[226] They spoke to their personal interest in eliminating the drama in the Department and to internal personnel disputes and working conditions;

---

[224] 4RR57,87,94-96;6RR103,105-06.
[225] 2RR9.
[226] 2RR9.

74

this was not protected speech. Even if Davis had criticized Clark and was fired for that, the criticism of her supervisor is not protected speech. *See Connick,* 461 U.S. at 149; *Caro v. City of Dallas,* 17 F. Supp. 2d 618, 631 (N.D. Tex. 1998).

Davis claims a violation of her free speech rights when there is no evidence that Anderson, the person who fired Davis, knew about the meeting or cared about the meeting when he fired Davis approximately a year later. The Court should render a take-nothing judgment on this claim.

### 2. Age or retirement

Davis obtained findings that when she "opposed the remarks by Doug Anderson about her age or retirement," she spoke as a citizen on a matter of public concern, and not on matters which were purely job-related, that her speech was not disruptive, and that speech was a substantial or motivating factor in Davis's termination.[227] The evidence is legally insufficient to support the findings. Essentially, this claim attempts to avoid the proof requirements of an age discrimination claim,

---

[227] CR128-31.

but the claim also fails for lack of evidence and as a matter of law. The speech was not a matter of public concern and any speech about age and retirement was not the cause of her termination.

Whether the speech involves a matter of public concern and is protected speech is a legal question for the court to decide. *Connick v.* 461 U.S. at 147 n7; *Rankin v. McPherson*, 483 U.S. 378, n. 9(1987). "In *Connick,* the Supreme Court taught that 'when a public employee speaks . . . as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.'" *Alexander v. Eads,* 392 F.3d 138, 142-43 (5th Cir. 2004).

In *Eads*, several plaintiffs had complained about a promotion policy. *Id. at* 143. Their "concerns were voiced only in the form of questions regarding each officer's attempt to attain promotion, not about general promotion policy" and the "form of these questions was clearly private, as they were not leaked to a reporter or sent to an elected state official." *Id.* Holding that the context of the statements was "completely

private," the court observed that no one could reasonably argue that the complaints were made in the context of a widespread debate in the community or would make valuable contributions to public debate. *Id; see also Haynes v. City of Beaumont,* 35 S.W.3d 166, 179 (Tex. App.— Texarkana 2000, no pet.).

Davis's statements related to a matter of private concern and involved a one-on-one discussion with Davis's supervisor and general discussion in a staff meeting. As in *Eads,* the statements "were clearly private, as they were not leaked to a reporter or sent to an elected public official." *Eads*, 392 F.3d at 143. Any comment Davis may have made was not made "against a backdrop of widespread debate in the community" nor would they make a "valuable contributions to public debate." *Id.* at 143.

Furthermore, the evidence is legally insufficient to establish that her termination was due to age, nor is there any evidence she was terminated because of her opposition to any statement by Anderson about age or retirement. She was terminated for a specific reason: the

December meeting. The Court should render a take-nothing judgment on this claim.

### 3. The transfer

Davis obtained findings that, when she "opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf," she spoke as a citizen on a matter of public concern, and not on matters which were purely job-related, that her speech was not disruptive, and that speech was a substantial or motivating factor in Davis's termination.[228] The evidence is legally insufficient to support the findings.

Even if Davis's conversation with Clark is protected speech, these jury findings do not support a judgment based on a violation of the First Amendment because there is no evidence that Davis's conversation with Clark was a cause of Davis's termination. Davis's opposition to Williams's transfer was not a cause of her termination as a matter of law.

---

[228] CR128-31.

The jury issue asked whether Davis was terminated due to her speech in which she "opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf." The record reflects only one conversation between Williams and Clark on this issue.[229] Davis described the conversation this way:

> I told her that—I asked her what she was gonna do about it and I told her that I was willing to do something about it. I told her I would even do it with her if that is what it would take. But, she told me no, and she said that she was going to handle it?[230]

Davis testified that Clark told her that Clark did not know who she was going to see, but at another point Davis testified that Clark said she was already doing something about it.[231] After Clark declined Davis's offer of assistance, Davis testified that she left it in Clark's hands, and Davis did not get back to her because she knew that Clark had talked to somebody or was going to talk to somebody.[232] Davis testified that the only person she complained to was her immediate supervisor, Clark.[233]

---

229 5RR39.
230 5RR38-9.
231 5RR38;6RR51.
232 5RR38-39;6RR51.
233 5RR39;6RR52-53.

Davis was not alone in her opposition to the transfer. Clark opposed the transfer. She told Anderson it was not a good idea because Alyce Williams handled all the paperwork and did a good job at it.[234] Both Clark and Anderson were aware that the entire office staff was opposed to the transfer. Clark told Anderson that the staff was concerned about Williams being "fired," which was the term the staff used for her transfer.[235] According to Davis, everyone was talking about the transfer, and Anderson called a meeting to discuss the issue with the staff.[236] Everyone in the department was at the meeting, including Alyce Williams.[237] Anderson explained that Williams was being transferred to H.R., explained what her job would be, and explained the importance of her job.[238] Anderson did not fire the staff for being concerned about Williams; instead he talked to them.[239]

The opposition that Davis expressed was one conversation in which she asked Clark what she was going to do about it and

---

[234] 3RR151;4RR62.
[235] 3RR153-54.
[236] 5RR39-40.
[237] 5RR40.
[238] 5RR41.
[239] 4RR22-23.

volunteered to help Clark oppose the transfer. There is no evidence to support the jury finding that the one conversation had anything to do with Davis's termination.

There is no evidence that Anderson knew about the Clark-Davis conversation about Williams's transfer before Davis was terminated. Davis failed to present evidence that her termination was retaliation for protected speech. *Beattie,* 254 F.3d at 603-04. The evidence conclusively establishes that Davis was fired as a result of the December meeting. The Court should render a take-nothing judgment on this claim.

### 4. The debt

Davis obtained findings that, "when she spoke to Doug Anderson in regards to the debt owed to her by Deb Clark" she spoke as a citizen on a matter of public concern, and not on matters which were purely job-related, her speech was not disruptive, and that speech was a substantial or motivating factor in Davis's termination.[240] The evidence is legally insufficient to support the jury's answers to Questions 4D, 5D, and 6D. The County agrees that the December meeting, in which the debt was

---

[240] CR128-31.

discussed, was a substantial or motivating factor in Davis's termination.[241] In fact, it was the cause of termination. But the December conversation between Anderson and Davis was not protected speech.

Davis's husband told Davis that "it's not a whole lot of money but I want my money back and I can get it back in small claims court."[242] He had the paperwork, and she thought that he really was going to take Clark to small claims court.[243] Davis decided that she should let Anderson know.[244]

Davis's version is that she told Anderson in the December meeting that she tried hard to get the money from Clark, that Clark would not pay it back, that her husband was pressing Davis, and that he was going to take Clark to small claims court.[245] She recalls telling him that Clark was talking about Anderson behind his back to people in the Department

---

[241] CR131, Question 7D.
[242] 5RR44-45.
[243] 5RR45.
[244] 5RR46.
[245] 5RR46-47;6RR24-25.

and maybe even to people in the courthouse.[246] When the meeting was over, Anderson said that he would talk to Clark.[247]

Anderson testified that Davis came in and leveled a number of accusations against Clark and that the money was the last thing she brought up.[248] Davis complained that Clark had plotted to have Anderson fired, that she had conspired against the previous purchasing agent, that Clark had complained to her subordinates about spending late hours at the office with Anderson, and that Clark's husband was jealous of the number of text messages and late hours at the office.[249] Anderson testified that the last thing she mentioned was that Clark owed her $300.[250]

Anderson testified that he tries very hard not to be angry but that the conversation was very upsetting.[251] Anderson called Clark in that afternoon and told her that she needed to get a money order for $300 to

---

[246] 5RR47;6RR23.
[247] 6RR27.
[248] 4RR82,83.
[249] 4RR111.
[250] 4RR111.
[251] 4RR112.

repay Davis if she had borrowed the money.[252] She replied, "Yes, sir."[253]

Clark testified that she told Anderson that she thought she had repaid her.[254] At another point, she said she was not sure if she told him that, explaining that she was being "hammered pretty hard" by Anderson.[255]

The next day, Anderson met with both Clark and Davis together.[256] He gave Davis a money order for $300.00.[257] Other than saying that $300 was too much, Davis said nothing.[258] Clark said nothing at all.[259] Anderson said, "You are never to speak of this again. Ever."[260] Davis testified he looked at her and said, "You are reprehensible."[261] He added: "This is the reason this department has such a terrible reputation."[262] Neither Clark nor Davis said another word; they signed the receipt and left.[263]

---

[252] 3RR172.
[253] 3RR172.
[254] 3RR172.
[255] 4RR33-34.
[256] 5RR51.
[257] 5RR51.
[258] 5RR51.
[259] 5RR51.
[260] 5RR51.
[261] 5RR51.
[262] 5RR51.
[263] 5RR51.

Anderson's initial thought was that this was not going to work and he decided to fire Davis.[264] He testified that "at that point I decided that it was no longer going to be a worthy working relationship, and I decided to terminate her at that point."[265] He waited three months before terminating her because he did not want to terminate her at Christmas, then there was a health issue in her family, and then she was on vacation.[266] In response to a question from Davis's counsel, Anderson agreed to this statement: "…well, the truth of the matter is if Donna had never come to your office in December to talk about Deb, you never would have made the decision to fire Donna."[267]

Whether or not Anderson made the right management decision, what was said in that meeting was not protected speech. When an employee speaks purely on a matter of personal interest, no constitutional protection attaches. *Connick,* 461 U.S. at 147; *Chavez,* 135 Fed. Appx. at 669; *see Eads,* 392 F.3d at 143; *Stotter v. University of Texas at San Antonio,* 508 F.3d 812, 825-27 (5th Cir. 2007); *Branton*,

---

[264] 4RR94.
[265] 4RR58.
[266] 4RR93-94.
[267] 4RR87.

272 F.3d at 739 ("[S]peech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern."); *Finch v. Fort Bend I.S.D.,* 333 F.3d 555, 563-64 (5th Cir. 2003).

Davis's statements at the December meeting involved an internal personnel dispute that was presented only to her department head in a private meeting, was not against the backdrop of any widespread debate in the community, and was related to her dispute with Clark about a private debt. *See Davis v. McKinney,* 518 F.3d 304, 315 (5th Cir. 2008) ("Speech related to an employee's job duties that is directed within the employee's chain of command is not protected"). Davis's speech at the December meeting was not protected speech. The Court should render a take-nothing judgment on this claim.

## PRAYER

No meritorious cause of action exists for the termination of an at-will employee as a result of the December meeting. Jefferson County respectfully requests that the Supreme Court grant this petition for review and reverse the lower court's judgment, and:

1. Considering all the issues, render judgment that Donna Davis recover nothing, or that she recover nothing on her age discrimination claim and remand the cause to the court of appeals for consideration of the issues not reached by that court;

2. Alternatively, render judgment that Donna Davis recover no front pay on her age discrimination claim, or that the compensatory damages are capped at $300,000, and remand the cause to the Court of Appeals for consideration of the issues, including excessiveness, not reached by that court;

3. Alternatively, remand the cause to the court of appeals for consideration of the front pay and excessiveness of the award, and the issues not reached by the court;

4. Alternatively, remand the cause to the trial court for a new trial.

Jefferson County requests all other relief to which it is entitled.

Respectfully submitted,

MEHAFFYWEBER, P.C.

By: */s/ David Gaultney*
David Gaultney
State Bar No. 07765300
davidgaultney@mehaffyweber.com
MehaffyWeber, P.C.
823 Congress Avenue, Suite 200
Austin, Texas 78701
Phone: (512) 394-3840
Fax: (512) 394-3860

Patricia Chamblin
State Bar No. 04086400
patriciachamblin@mehaffyweber.com
MehaffyWeber, P.C.
2615 Calder, Suite 800
P.O. Box 16
Beaumont, Texas 77704
Phone: 409-835-5011
Fax: 409-835-5177

Jeremy Stone
State Bar No. 24013577
jeremystone@mehaffyweber.com
MehaffyWeber, P.C.
500 Dallas, Suite 1200
Houston, Texas 77002
Phone: (713) 655-1200
Fax: (713) 655-0222

Kathleen Kennedy
Chief Civil Attorney
kkennedy@co.jefferson.tx.us
Office of Criminal District Attorney
1001 Pearl Street, 3rd Floor
Beaumont, Texas 77701
Phone: (409) 835-8550
Fax: (409-784-5893

ATTORNEYS FOR PETITIONER
JEFFERSON COUNTY, TEXAS

## CERTIFICATE OF COMPLIANCE

This will certify that the foregoing Brief on the Merits complies with the length requirements of Tex. R. App. P. 9.4(i). The Brief has 14,915 words in the document, not counting the contents excluded by Rule 9.4(i)(1).

*/s/ David Gaultney*

# CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of this document has been forwarded to the following counsel of record via electronic filing manager and e-mail on May 13, 2015.

Larry Watts
Azuwuike "Ike" Okoro Okorafor
Watts & Associates
wattstrial@gmail.com
P. O. Box 2214
Missouri City, TX 77459

Iain G. Simpson
Simpson, PC
Iain@simpsonpc.com
1333 Heights Blvd., Suite 102
Houston, Texas 77008

ATTORNEYS FOR
RESPONDENT, DONNA DAVIS

*/s/ David Gaultney*

**NO. 14-1029**

IN THE SUPREME COURT OF TEXAS

---

JEFFERSON COUNTY, TEXAS,
*Petitioner*

v.

DONNA DAVIS,
*Respondent*

---

ON PETITION FOR REVIEW FROM THE
FOURTEENTH COURT OF APPEALS, HOUSTON, TEXAS
No. 14-13-00663-CV

---

## INDEX TO APPENDIX

---

| **Tab:** | **Description:** |
|---|---|
| A. | Final Judgment |
| B. | Jury Charge and Verdict |
| C. | Court of Appeals Majority Opinion |
| D. | Court of Appeals Dissenting Opinion |
| E. | Supplemental Memorandum Opinion of Denial of Rehearing |
| F. | TEX. LAB. CODE ANN. § 21.125 |
| G. | TEX. LAB. CODE ANN. § 21.258 |
| H. | TEX. LAB. CODE ANN. § 21.2585 |
| I. | 42 U.S.C. § 2000e-5 |

CAUSE NO B-182252

| DONNA DAVIS, | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| V. | § | OF JEFFERSON COUNTY |
| | § | |
| JEFFERSON COUNTY, TEXAS, et al. | § | |
| Defendant. | § | 60TH DISTRICT COURT |

## FINAL JUDGMENT

**BE IT REMEMBERED,** that on February 25, 2013, this case was called for trial by jury. Plaintiff, DONNA DAVIS, appeared personally and by her attorneys, Larry Watts, Ike Okorafor, and Melynda Smith Lombardo and announced ready for trial. Defendant(s) JEFFERSON COUNTY, DOUG ANDERSON (personally), and DEBRA CLARK (personally) appeared (and) by their attorney, Thomas Rugg, and announced ready for trial.

After a jury was impaneled and sworn, evidence and arguments of counsel were presented. In response to an agreed jury charge and special interrogatories the jury returned a unanimous verdict on March 4, 2013, which the Court received, filed, and entered of record. A copy of the questions submitted to the jury and the jury's findings are attached as Exhibit "A" and incorporated by this reference as if set forth in full herein.

Therefore, the Court hereby RENDERS final judgment for the Plaintiff, DONNA DAVIS, against JEFFERSON COUNTY as follows:

Accordingly, the Court orders that Plaintiff recover the following from Defendant JEFFERSON COUNTY, TEXAS:

1. Actual Damages totaling $1,312,145 and detailed below:

    a. Damages for past mental anguish: $50,000

    b. Damages for future mental anguish: $500,000

    c. Damages for past loss of earning: $258,090

    d. Damages for future loss of earning: $318,147

    e. Damages for past loss of benefits: $147,100

    f. Damages for future loss of benefits: $38,808

2. Prejudgment interest on the actual damages herein, in the amount of $1,312,145, at the rate of 5.00% per annum from March 3, 2008, until the date of this final judgment in the amount of $1,674,666.47 as of March of 2013.

3. Post judgment interest on all of the above at the rate of 5.00% per annum, compounded annually, from the date this final judgment is entered until all amounts set forth above are paid in full.

4. Reasonable and necessary attorney fees in the amount of $91,908.75 for the prosecution of this case through to this final judgment.

5. Court cost and expenses totaling $1,867.58

**6.** This final judgment finally disposes of all claims and all parties and is appealable.

**7.** The Court orders execution to issue for this judgment.

SIGNED on _June 19th_, 2013

_Gary Sanderson_
PRESIDING JUDGE



CAUSE NUMBER B-182252

| | | |
|---|---|---|
| DONNA DAVIS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| V. | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| JEFFERSON COUNTY, DOUGLAS | § | |
| ANDERSON, DEB CLARK, | § | |
| Defendants. | § | 60th JUDICIAL DISTRICT COURT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions, which previously have been given you. I now shall give you additional instructions, which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court -- that is, what you have seen and heard in this courtroom -- together with the law as given to you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss or concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way, if others will agree to answer another question another way.

1

Exhibit "A"

157

6.     You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be considered jury misconduct and it may require another trial by another jury. If this should occur, all of our time will have been wasted.

A presiding juror or any other person who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a "preponderance of the evidence." The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." Whenever a question requires an answer other than "Yes" or "No," your answer still must be based on a preponderance of the evidence.

## INSTRUCTIONS

Donna Davis claims that the Defendant(s), while acting "under color of state law," intentionally deprived the Plaintiff of rights under the Texas Labor Code and the Constitution of the United States.

Donna Davis claims that while the Defendant(s) were acting under color of authority of Jefferson County, Texas they intentionally violated the Donna Davis's rights, both statutory and Constitutional when they allegedly took adverse actions against her in the employment place. The Plaintiff claims that the Defendant(s) discharged Donna Davis from employment because of the Donna Davis's age, and her good faith opposition to the transfer of Alyce Williams from the Purchasing Department in 2007, in claimed violation of the Texas Labor Code. Donna Davis further claims that other motivating reasons for claimed adverse actions taken against her by Defendant(s) were her exercise of the rights of free speech under the First Amendment of the Constitution of the United States.

A person may sue for an award of money damages against Jefferson County or anyone who violates the Texas Labor Code or who intentionally deprives a person "under color" of State law or custom, of Donna Davis' rights under the Constitution of the United States.

2

Thus, Donna Davis must prove by preponderance of the evidence each of the following:

1. That the actions of the defendant(s) were "under color" of the authority of Jefferson County, Texas;

2. That Donna Davis' speech activities were constitutionally "protected" under the First Amendment;

3. That Donna Davis' exercise of protected First Amendment rights was a substantial or motivating factor in the Defendant(s) decision to discharge the Plaintiff from employment.

State or Local officials act "under color" of the governmental entity when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

You are instructed as a matter of law that Douglas Anderson III, acted as Jefferson County's final authority in personnel actions taken against Donna Davis when acting as Purchasing Agent for Jefferson County.

In determining whether the Defendant(s) intentionally violated Donna Davis' First Amendment rights, you must remember that the Plaintiff as a public employee has a right to practice freedom of speech only when not purely related to her job, speaking about matters which concerned the community, and to the extent that her speech did not unduly interfere with her duties and responsibilities, or the workplace.

To prove that Donna Davis' speech activities were a substantial or motivating factor in the Defendant's(s') decision, Donna Davis does not have to prove that those speech activities were the only reason the defendants made the decision. Donna Davis need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendant's(s') decision.

Donna Davis must also prove by a preponderance of the evidence that the act or failure to act by the Defendant(s) was a cause in fact of the damage Donna Davis suffered. An act or failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. Donna Davis must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Donna Davis suffered. An act or omission is a

3.

159

proximate cause of the Donna Davis's injuries or damages if it appears from the evidence that the injury or damages was a reasonably foreseeable consequence of the act or omission.

A fact may be established by direct evidence or by circumstantial evidence, or both. A fact is established by direct evidence when proved by documentary evidence, or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

4

160

## QUESTION NO. 1

Was age a motivating factor in Defendant's decision to terminate Donna Davis' employment?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

An employer may act for a good reason, a bad reason, or any reason at all so long as it is not motivated on the basis of age.

Answer Yes or No.

Answer: __Yes__

5

161

## QUESTION NO. 2

Was Donna Davis' opposition to Douglas Anderson's transfer of Alyce Williams made in good faith?

Answer "yes" or "no".

Answer: _____Yes_____

6

## QUESTION NO. 3

Was Donna Davis' opposition to Douglas Anderson's transfer of Alyce Williams a motivating factor in Defendant's decision to terminate Donna Davis' employment?

Answer "yes" or "no".

Answer: _Yes_

## QUESTION NO. 4

1. Did Donna Davis speak as a citizen and not on matters which were purely job-related, when she:

A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer Yes or No: Yes

B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer: Yes or No Yes

C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer Yes or No: Yes

D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer Yes or No: Yes

8

164

QUESTION NO. 5

Do you find from a preponderance of the evidence

      1. That Donna Davis' comments did not substantially disrupte the efficiency of the work done in purchasing department, when she:

      A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer Yes or No: _Yes_

      B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer Yes or No: _Yes_

      C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer Yes or No: _Yes_

      D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer Yes or No: _Yes_

9

## QUESTION NO. 6

Do you find from a preponderance of the evidence

1. Donna Davis' speech related to or was on matters of political, social, or other concerns to the community or on a matter of public concern, when she:

A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer (Yes) or No: __Yes__

B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer: (Yes) or No __Yes__

C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer (Yes) or No: __Yes__

D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer (Yes) or No: __Yes__

10

166

# QUESTION NO. 7

Do you find from a preponderance of the evidence that Donna Davis' exercise of speech was a substantial or motivating factor of Donna Davis' termination, when she:

A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer Yes or No: __Yes__

B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer: Yes or No __Yes__

C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer Yes or No: __Yes__

D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer Yes or No: __Yes__

11

# INSTRUCTIONS ON DAMAGES

Compensatory damages are not limited to economic damages and/or expenses that Donna Davis may have suffered or incurred because of Defendant's conduct. If Donna Davis wins, she is also entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that she has suffered because of the defendant's conduct.

You may award compensatory damages only for injuries that Donna Davis proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Donna Davis' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Donna Davis has actually suffered or that she is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

## A. Damages Accrued
If you find for Donna Davis, she is entitled to recover an amount that will fairly compensate her for any damages she has suffered to date.

## B. Calculation of Future Damages
If you find that Donna Davis is reasonably certain to suffer damages in the future from her injuries, then you should award her the amount you believe would fairly compensate her for such future damages.

## C. Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that Donna Davis will not actually suffer until some future date. If you should find that Donna Davis is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages. If you award damages for loss of future earnings, you must consider two particular factors:

1. You should reduce any award by the amount of the expenses proven that Donna Davis would have incurred in making those earnings.

2. If you make an award for future loss of earnings, you must reduce it to present value.

12

"Mental anguish", as element of damages, implies relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of those, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

## QUESTION NO. 8

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Plaintiff for the damages, if any, that resulted from her termination?

Consider the elements of damages listed below and no others. Consider each element separately. Do not include damages for one element in any other element. Do not include any amount for interest. Answer in dollars and cents, if any.

(a)   Counseling expenses incurred in the past

ANSWER:   $ 0

(b)   Mental anguish in the past.

ANSWER:   $ 50,000

(c)   Mental anguish that in reasonable probability Plaintiff will suffer in the future.

ANSWER:   $ 500,000

(d)   Loss of earnings in the past.

ANSWER:   $ 258,090

(e)   Loss of earnings that in reasonable probability Plaintiff will suffer in the future.

ANSWER:   $ 318,147

(f)   Loss of retirement, health, medical, and life insurance, and other similar fringe benefits in the past.
ANSWER:   $ 143,100

(g)   Loss of retirement, health, medical, and life insurance, and other similar fringe benefits that in reasonable probability Plaintiff will suffer in the future.

ANSWER:   $ 38,808

13

169

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is have this entire charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror to:

1. Preside during your deliberations;

2. See that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3. Write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge;

4. Vote on the questions;

5. Write your answers to the questions in the spaces provided; and

6. Certify to your verdict in the space provided for the presiding juror's signature or obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return to the courtroom with your verdict.

_____
Gary Sanderson – Presiding Judge
60th District Court

14

170

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same to the Court as our verdict (to be signed by the presiding juror, if unanimous).

*Richard Williams, Jr.*
Presiding Juror

(to be signed by those rendering the verdict if non- unanimous)

Jamie Ramirez

Andrea Cantue

Leah Mattock

Michelle Paul Thomas

Elton Laday Jr.

Verdict

FILED
at 1:40 o'clock p. M
MAR 04 2013
LOLITA RAMOS
CLERK DISTRICT COURT OF JEFFERSON CO., TEXAS
BY_____ DEPUTY

FILED
at 4:38 o'clock p. M
MAR 04 2013
LOLITA RAMOS
CLERK DISTRICT COURT OF JEFFERSON CO., TEXAS
BY_____ DEPUTY

15

171

ORIGINAL C

CAUSE NUMBER B-182252

| | | |
|---|---|---|
| DONNA DAVIS, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| V. | § | |
| | § | JEFFERSON COUNTY, TEXAS |
| JEFFERSON COUNTY, DOUGLAS | § | |
| ANDERSON, DEB CLARK, | § | |
| Defendants. | § | 60th JUDICIAL DISTRICT COURT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions, which previously have been given you. I now shall give you additional instructions, which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court -- that is, what you have seen and heard in this courtroom -- together with the law as given to you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss or concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way, if others will agree to answer another question another way.

1

121

6. You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be considered jury misconduct and it may require another trial by another jury. If this should occur, all of our time will have been wasted.

A presiding juror or any other person who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a "preponderance of the evidence." The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." Whenever a question requires an answer other than "Yes" or "No," your answer still must be based on a preponderance of the evidence.

## INSTRUCTIONS

Donna Davis claims that the Defendant(s), while acting "under color of state law," intentionally deprived the Plaintiff of rights under the Texas Labor Code and the Constitution of the United States.

Donna Davis claims that while the Defendant(s) were acting under color of authority of Jefferson County, Texas they intentionally violated the Donna Davis's rights, both statutory and Constitutional when they allegedly took adverse actions against her in the employment place. The Plaintiff claims that the Defendant(s) discharged Donna Davis from employment because of the Donna Davis's age, and her good faith opposition to the transfer of Alyce Williams from the Purchasing Department in 2007, in claimed violation of the Texas Labor Code. Donna Davis further claims that other motivating reasons for claimed adverse actions taken against her by Defendant(s) were her exercise of the rights of free speech under the First Amendment of the Constitution of the United States.

A person may sue for an award of money damages against Jefferson County or anyone who violates the Texas Labor Code or who intentionally deprives a person "under color" of State law or custom, of Donna Davis' rights under the Constitution of the United States.

2

122

Thus, Donna Davis must prove by preponderance of the evidence each of the following:

1. That the actions of the defendant(s) were "under color" of the authority of Jefferson County, Texas;

2. That Donna Davis' speech activities were constitutionally "protected" under the First Amendment;

3. That Donna Davis' exercise of protected First Amendment rights was a substantial or motivating factor in the Defendant(s) decision to discharge the Plaintiff from employment.

State or Local officials act "under color" of the governmental entity when they act within the limits of their lawful authority. However, they also act "under color" of the authority of the State when they act without lawful authority or beyond the bounds of their lawful authority if their acts are done while the officials are purporting or pretending to act in the performance of their official duties. An official acts "under color" of the state authority if he abuses or misuses a power that he possesses only because he is an official.

You are instructed as a matter of law that Douglas Anderson III, acted as Jefferson County's final authority in personnel actions taken against Donna Davis when acting as Purchasing Agent for Jefferson County.

In determining whether the Defendant(s) intentionally violated Donna Davis' First Amendment rights, you must remember that the Plaintiff as a public employee has a right to practice freedom of speech only when not purely related to her job, speaking about matters which concerned the community, and to the extent that her speech did not unduly interfere with her duties and responsibilities, or the workplace.

To prove that Donna Davis' speech activities were a substantial or motivating factor in the Defendant's(s') decision, Donna Davis does not have to prove that those speech activities were the only reason the defendants made the decision. Donna Davis need only prove that the speech activities were a substantial consideration that made a difference in or influenced the Defendant's(s') decision.

Donna Davis must also prove by a preponderance of the evidence that the act or failure to act by the Defendant(s) was a cause in fact of the damage Donna Davis suffered. An act or failure to act is a cause in fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. Donna Davis must also prove by a preponderance of the evidence that the act or failure to act by the Defendant was a proximate cause of the damage Donna Davis suffered. An act or omission is a

3.

proximate cause of the Donna Davis's injuries or damages if it appears from the evidence that the injury or damages was a reasonably foreseeable consequence of the act or omission.

A fact may be established by direct evidence or by circumstantial evidence, or both. A fact is established by direct evidence when proved by documentary evidence, or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

4

# QUESTION NO. 1

Was age a motivating factor in Defendant's decision to terminate Donna Davis' employment?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

An employer may act for a good reason, a bad reason, or any reason at all so long as it is not motivated on the basis of age.

Answer Yes or No.

Answer: _Yes_

5

# QUESTION NO. 2

Was Donna Davis' opposition to Douglas Anderson's transfer of Alyce Williams made in good faith?

Answer "yes" or "no".

Answer: _____Yes_____

QUESTION NO. 3

Was Donna Davis' opposition to Douglas Anderson's transfer of Alyce Williams a motivating factor in Defendant's decision to terminate Donna Davis' employment?

Answer "yes" or "no".

Answer: _____Yes_____

7

# QUESTION NO. 4

1. Did Donna Davis speak as a citizen and not on matters which were purely job-related, when she:

A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer Yes or No: Yes

B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer: Yes or No Yes

C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer Yes or No: Yes

D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer Yes or No: Yes

8

128

## QUESTION NO. 5

Do you find from a preponderance of the evidence

    1. That Donna Davis' comments did not substantially disrupte the efficiency of the work done in purchasing department, when she:

    A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer (Yes) or No: __Yes__

    B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer (Yes) or No: __Yes__

    C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer (Yes) or No: __Yes__

    D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer (Yes) or No: __Yes__

9

# QUESTION NO. 6

Do you find from a preponderance of the evidence

    1. Donna Davis' speech related to or was on matters of political, social, or other concerns to the community or on a matter of public concern, when she:

    A.  Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer (Yes) or No: __Yes__

    B.  Opposed the remarks by Doug Anderson about her age or retirement?

Answer: (Yes) or No __Yes__

    C.  Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer (Yes) or No: __Yes__

    D.  Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer (Yes) or No: __Yes__

10

130

## QUESTION NO. 7

Do you find from a preponderance of the evidence that Donna Davis' exercise of speech was a substantial or motivating factor of Donna Davis' termination, when she:

A. Spoke to Commissioner Domingue about the appointment of the Purchasing Agent?

Answer Yes or No:___Yes___

B. Opposed the remarks by Doug Anderson about her age or retirement?

Answer: Yes or No___Yes___

C. Opposed the transfer of Alyce Williams to Deb Clark because Alyce Williams is a dwarf?

Answer Yes or No: ___Yes___

D. Spoke to Doug Anderson in regards to the debt owed to her by Deb Clark?

Answer Yes or No: ___Yes___

11

131

# INSTRUCTIONS ON DAMAGES

Compensatory damages are not limited to economic damages and/or expenses that Donna Davis may have suffered or incurred because of Defendant's conduct. If Donna Davis wins, she is also entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that she has suffered because of the defendant's conduct.

You may award compensatory damages only for injuries that Donna Davis proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Donna Davis' damages, no more and no less. Damages are not allowed as a punishment and cannot be imposed or increased to penalize the defendant. You should not award compensatory damages for speculative injuries, but only for those injuries which Donna Davis has actually suffered or that she is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A. Damages Accrued
If you find for Donna Davis, she is entitled to recover an amount that will fairly compensate her for any damages she has suffered to date.

B. Calculation of Future Damages
If you find that Donna Davis is reasonably certain to suffer damages in the future from her injuries, then you should award her the amount you believe would fairly compensate her for such future damages.

C. Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that Donna Davis will not actually suffer until some future date. If you should find that Donna Davis is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages. If you award damages for loss of future earnings, you must consider two particular factors:

1. You should reduce any award by the amount of the expenses proven that Donna Davis would have incurred in making those earnings.

2. If you make an award for future loss of earnings, you must reduce it to present value.

12

"Mental anguish", as element of damages, implies relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of those, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

QUESTION NO. 8

What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Plaintiff for the damages, if any, that resulted from her termination?

Consider the elements of damages listed below and no others. Consider each element separately. Do not include damages for one element in any other element. Do not include any amount for interest. Answer in dollars and cents, if any.

(a) Counseling expenses incurred in the past

ANSWER: $ 0

(b) Mental anguish in the past.

ANSWER: $ 50,000

(c) Mental anguish that in reasonable probability Plaintiff will suffer in the future.

ANSWER: $ 500,000

(d) Loss of earnings in the past.

ANSWER: $ 258,090

(e) Loss of earnings that in reasonable probability Plaintiff will suffer in the future.

ANSWER: $ 318,147

(f) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits in the past.

ANSWER: $ 143,100

(g) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits that in reasonable probability Plaintiff will suffer in the future.

ANSWER: $ 38,808

13

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is have this entire charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror to:

1.      Preside during your deliberations;

2.      See that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3.      Write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge;

4.      Vote on the questions;

5.      Write your answers to the questions in the spaces provided; and

6.      Certify to your verdict in the space provided for the presiding juror's signature or obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return to the courtroom with your verdict.

Gary Sanderson – Presiding Judge
60th District Court

# CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same to the Court as our verdict (to be signed by the presiding juror, if unanimous).

_Richard Williams, Jr._
Presiding Juror

(to be signed by those rendering the verdict if non- unanimous)

at 1:40 o'clock p. M
MAR 04 2013
LOLITA RAMOS
CLERK DISTRICT COURT OF JEFFERSON CO., TEXAS
BY _____ DEPUTY

at 4:38 o'clock p. M
MAR 04 2013
LOLITA RAMOS
CLERK DISTRICT COURT OF JEFFERSON CO., TEXAS
BY _____ DEPUTY

15

135

**Affirmed as Modified and Majority and Dissenting Memorandum Opinions filed August 28, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00663-CV

---

### JEFFERSON COUNTY, TEXAS, Appellant

### V.

### DONNA DAVIS, Appellee

---

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Court Cause No. B-182,252**

---

## MEMORANDUM OPINION

Jefferson County appeals from a jury verdict awarding over $1.3 million in damages to Donna Davis for her wrongful termination from the Jefferson County Purchasing Department. The County contends the evidence is legally insufficient to support the jury's findings related to Davis's (1) Section 1983 claim based on the County's violation of her First Amendment right to free speech, and (2) age-discrimination claim based on the Texas Commission on Human Rights Act

("TCHRA"). The County also contends that there is no evidence to support the damages awarded for future mental anguish.

We hold that there is legally sufficient evidence to support the jury's finding of age discrimination, and because TCHRA authorizes recovery of the damages awarded, we need not review the sufficiency of the evidence to support the jury's findings on Davis's federal claim. We agree, however, that there is no evidence to support the jury's assessment of damages for future mental anguish. We accordingly modify the judgment to eliminate the award of those damages, and affirm the judgment as modified.

## I. AGE DISCRIMINATION

In its seventh issue on appeal, the County contends there is no evidence that the County discriminated against Davis based upon her age. In particular, the County argues that there is no evidence to support the jury's affirmative answer to Jury Question No. 1, which asked whether age was a motivating factor in the County's decision to terminate Davis's employment.

First, we will review the law regarding age discrimination generally. Then, we identify the standard of review for a legal-sufficiency challenge, and we review the relevant evidence. Finally, we conclude that Davis adduced legally sufficient evidence to support the jury's answer to Jury Question No. 1.

### A.      Proof of Age Discrimination Generally

Davis sued the County for violating the Texas Commission on Human Rights Act, which prohibits employers from discriminating against or discharging an employee based on age. *See* TEX. LAB. CODE ANN. § 21.051 (West 2006); *AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam). Accordingly, Davis "bore the burden of proving that age was a motivating factor"

2

in the County's decision to discriminate against her. *AutoZone*, 272 S.W.3d at 592; *see also* TEX. LAB. CODE ANN. § 21.125(a) (West 2006) ("[A]n unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice . . . .").

In the charge, the jury was instructed that "[a] 'motivating factor' in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision." Davis accordingly had to prove that age was a motivating factor for her termination, not the sole but-for cause. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam).

Davis could satisfy her burden of proof in either of two ways. "The first method, rather straightforward, involves proving discriminatory intent via direct evidence of what the defendant did and said." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). The second method involves a burden-shifting framework and requires the employee to first prove the elements of a prima facie case, which is that the employee was "(1) a member of the protected class under the TCHRA, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger." *Id.* at 642. Satisfying the prima facie case "'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* at 634 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S. Ct. 2943, 2949–50, 57 L. Ed. 2d 957 (1978)). Next, under the second method, if the employer produces evidence of a "legitimate, non-discriminatory reason for its decision to terminate" the employee,

then the employee nonetheless may prevail by proving "that the employer's stated reason for the adverse action was a pretext for discrimination." *Quantum Chem. Corp.*, 47 S.W.3d at 476.[1]  Still, an employee may prevail even if the employer's "reason, while true, is only one reason, and discrimination was another, 'motivating,' factor." *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

When reviewing pretext and motivating-factor evidence under the second method of proof, courts also will consider statements and remarks by the employer as additional evidence of discrimination. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225–26 (5th Cir. 2000).[2]  "The value of such remarks is dependent upon the content of the remarks and the speaker." *Russell*, 235 F.3d at 225 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151–53, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000)).  A reviewing court may not ignore comments showing an age-related animus merely because they were not made in the direct context of termination. *See Reeves*, 530 U.S. at 152, 120 S. Ct. at 2111.  But the Texas Supreme Court has held that statements and remarks by the employer "may serve as evidence of discrimination only if they are (1) related to the employee's protected class, (2) close in time to the employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue." *AutoZone*, 272 S.W.3d at 593.

---

[1] "Proving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination." *Quantum Chem. Corp.*, 47 S.W.3d at 481–82 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S. Ct. 2097, 2108–09, 147 L. Ed. 2d 105 (2000)).

[2] Federal cases are persuasive authority for interpreting the TCHRA. *See Garcia*, 372 S.W.3d at 633–34.

**B.      Legal-Sufficiency Standard of Review**

When analyzing a challenge to the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). "Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827.

**C.      The Evidence**

Davis was born in 1950 and began working at the Jefferson County Purchasing Department in 1993. In April 2007, Douglas Anderson was hired as the "purchasing agent"—the head of the department. Within a few weeks of taking over the office, he met with each employee individually. Anderson testified that in these meetings, he asked each employee his or her age.

Davis testified about her initial meeting with Anderson:

> [Anderson] asked me—he started to ask. He said, "How old are—" and then he said, "When did you graduate?" And I told him. And then he did the math and said, "Oh my God." He slid down in his chair like he was going to slide off his chair. And he said, "You're old enough to be"—I thought he was gonna say his mother—but he said "my oldest sister."
>
> . . . .
>
> He said, "Why are you still working here?" He said, "You're too old to be working." He said, "You're too old to be working here." And then he said—he asked me how old my husband was and I told him. At that time I believe he was 59. And he asked me if he still was working and I said yes, he was, he had worked at a refinery with the same employer for I believe it was 39 years at that time. And, again, he was just astounded.

5

He said, "He's too old to be working. Why is he still working? Why has he not retired?" Then he asked me why I had not retired yet.

And I said, "I'm not eligible. I'm not old enough. I haven't been here enough years for my age and my years of service to equal 75 years, which is the requirement for retiring."

And he said, "Well, are there no incentives for early retirement?"

And I said, "Not that I have ever heard of." I didn't know of any.

And he said, "Well, there must be incentives for early retirement." He said, "I'm going to look into that and I'm gonna work on that."

Davis stated that she told Anderson she did not want to retire. Anderson then asked her, "What could you possibly see yourself doing here in five years?" She told him that she enjoyed her job and had not made any plans to retire. Anderson testified that he did, in fact, speak with Davis during the initial one-on-one meeting about her age, her husband's age, and retirement.

Davis testified that she spoke to Deborah Clark about this meeting soon afterward. Clark was the assistant purchasing agent and second-in-command in the department. Clark had been Davis's supervisor for many years. Clark told Anderson that Davis was going to file a complaint about his comments on Davis's age. Anderson testified that around the same time, he asked Clark if he should fire Davis. Clark told Anderson that she did not want Davis fired.

Davis testified further that Anderson would bring up her retirement and "senior" status in every full-staff office meeting. She could not say for sure how often the staff meetings were held—whether they were weekly or every other week.[3] But Anderson repeatedly said that Davis would "be leaving the office first,

---

[3] Another Purchasing Department employee, Tamara Edwards, testified that there were weekly office meetings. Clark testified, "We had many staff meetings."

6

that [she] would be the very first person to go." Davis testified that Anderson "would always say, 'And Donna's gonna be the next one to go. Donna's gonna be leaving soon. Donna will be gone soon. Donna will be the first one to go." Anderson testified that he did, in fact, make such a comment about Davis in a staff meeting.[4]

Davis testified that Anderson would refer to her as "the senior person" and say "she's senior," even though he knew that there were two other employees who had been there longer than Davis. She testified, "[H]e would say I was the senior person. And, so, I knew he was referring to my age, not to my years of service, not to my experience in the office. He was talking about how old I was." She explained, "I didn't have seniority. I was only the oldest one in there." She testified that Anderson would remind her "every chance he got" of how old she was and that she needed to go and that it was time to retire: "And he reminded the whole office how old I was and I needed to go and it was time to retire." Davis also testified about a comment Anderson made on her birthday in February 2008, weeks before she was fired: "Mr. Anderson said, 'It's a good thing we don't have any candles because it would set that cake on fire.'"

Anderson testified that although he discussed Davis's termination as early as

---

[4] Other witnesses corroborated Davis's testimony. For example, one Purchasing Department employee, Tina Williams, provided a written statement, reporting that Anderson would say in meetings that:

> Donna would be retiring soon. Donna would tell him, "I have not made that decision yet, I will be eligible to retire." He would chuckle and would say "of course ma'am." When the retirement meetings were going on, he asked Donna if she got her invite. Donna said, "Yes." He said something like "Don't miss it, and make sure you go."

Another Purchasing Department employee, Alyce Williams (no relation to Tina), testified that in the first staff meeting, Anderson "said to Donna something to the effect of 'You must be about ready to retire' or 'we should look in to seeing how you can retire.'" Alyce thought this comment was "directed at her age."

7

a few weeks into his tenure in the Purchasing Department, he did not decide to terminate Davis until the first week of December 2007. He claimed to have decided to terminate Davis because she asked for a meeting with him and lodged a number of complaints against Clark. Anderson described those complaints as follows:

> [Davis said] [t]hat Deb Clark had plotted with Commissioner Alfred to have me fired; that Deb Clark had conspired against the previous purchasing agent; that Deb Clark had complained to her subordinates about spending late hours at the office alone with me; that she complained to her subordinates about late night text messages; that her husband Mr. Kenny Clark had become jealous of the number of text messages and late hours at the office. The last thing that she mentioned was that Deb Clark owed her $300.

Anderson testified that he did not believe the allegations; however, Clark testified that Anderson told her to get a money order to repay Davis the money.[5] The next day, Anderson called Clark and Davis to his office. According to Davis, Anderson handed her the money order and said "'You're never to speak of this again. Ever.' And . . . he looked straight at me and he said, 'You are reprehensible. . . . This is the reason this department has such a terrible reputation.'"

---

[5] Clark testified that she had borrowed $1,265 from Davis, her subordinate. Clark also testified that she borrowed money from three other coworkers over the years, including from the prior purchasing agent, whom Clark had reported to the district attorney's office for using public resources for a personal business. That purchasing agent resigned as a result of the allegation. Clark also provided a written statement, stating in part that she told other employees that "Anderson does not know his job and here is someone else I have to train."

Further, Tina Williams wrote in her statement that Clark had spoken with Commissioner Alfred about Anderson transferring another employee, effective December 1, 2007, out of the Purchasing Department. The transferred employee had dwarfism. Williams wrote that Clark told Commissioner Alfred that "Mr. Anderson did not feel comfortable around [the transferred employee] and he uses the 'm-word.'" Clark clarified that the "m-word" is "midget."

Davis acknowledged that she talked with Anderson about the personal debt owed by Clark.

8

Anderson testified that "at that point I decided that it was no longer going to be a worthy working relationship, and I decided to terminate [Davis]." Clark, on the other hand, testified that she did not want Davis terminated or disciplined. Clark stated at trial that she repeatedly told Anderson she did not want Davis terminated, and that she told him that she and Davis could work together. According to Clark, Anderson said "there would be no peace in the office," but Davis testified that after the December meeting, there was no turmoil between her and Clark.

Anderson also testified that "virtually all" of the departments Davis served gave negative reports about her, but no evidence substantiating this testimony was introduced at trial. Although Anderson named three people whom he said complained about Davis's work, only one testified at trial, and that witness denied that she ever complained about Davis to anyone. Moreover, the County Clerk for Jefferson County testified that when Anderson asked her about Davis, she told him that there were no complaints about Davis or problems with her. Clark testified that she did not receive complaints about Davis, and she did not know if Davis was ever counseled about her job performance. Davis testified that she had good working relationships with all the departments she purchased for.

Anderson testified that he did not fire Davis in December because he "wasn't gonna terminate anybody prior to Christmas," and he did not fire her in January, because "there was a health issue in her family." He believed that Davis was on vacation after that, so "March was the earliest time that was really available." Anderson fired Davis in March without providing her an explanation.[6] Davis testified that she asked Anderson why he was terminating her employment,

---

[6] Anderson gave her the opportunity to resign rather than be terminated. She declined to resign.

and he stated that he would not discuss it with her.

After he fired her, Anderson told a man whom he had supervised in the Navy to apply for the position. That man was about Anderson's age and younger than Davis, and he was hired to replace her.[7]

## D. Analysis of Age as a Motivating Factor

The County concedes that Davis satisfied the requirements to establish a prima facie case of age discrimination. The County contends, however, that there is no evidence "that the reason offered for termination was a pretext for discrimination or that age discrimination was one of the reasons among many for the termination."[8] We hold that the evidence is legally sufficient to support the jury's finding that age was a motivating factor for the County's decision to terminate Davis.

### 1. *Direct Evidence of Age as a Motivating Factor*

Davis presented direct evidence of a discriminatory animus based on Anderson's statements and remarks. Anderson was "an individual with authority over the employment decision" who made statements "related to the employee's protected class" (i.e., age). *See AutoZone*, 272 S.W.3d at 593. But were these statements "close in time to" and "related to" the employment decision at issue? *See id.* Anderson's statements in the one-on-one meeting that Davis was "too old to be working here" and should retire were made nearly a year before her termination. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380–81 (5th Cir. 2010) (holding that evidence of a comment made almost a year before

---

[7] Anderson resigned a few months later; Davis's replacement resigned four months after that. Clark became the purchasing agent.

[8] The County identified no cases in which the authoring court concluded that the evidence before it was legally insufficient to support a finding that age was a motivating factor for an adverse employment action.

10

termination was insufficient to raise a genuine issue of material fact as to pretext); *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that where a comment about the school having problems in the past with black coaches was made nearly a year before the non-renewal of the employee's teaching contract and the comment was "insignificant in comparison to the evidence of [the employee's] unfitness as a teacher," it was insufficient to establish discrimination).

Unlike the plaintiffs in *Jackson* and *Auguster*, however, Davis presented evidence that Anderson considered firing Davis around the same time that he made the comments in the one-on-one meeting. He also told Davis that she was "too old to be working" and should retire, which directly related to her non-employment with the County. We cannot ignore "'the potentially damning nature' of [Anderson's] age-related comments" merely because they might not have been made in the direct context of her termination; to do so would be to fail to draw all reasonable inferences in favor of the jury's verdict. *See Reeves*, 530 U.S. at 152, 120 S. Ct. at 2111 (explaining that the court of appeals erred by ignoring "critical evidence" of comments by a direct supervisor that the employee "was so old [he] must have come over on the Mayflower" and "was too damn old to do [his] job"; such evidence supported the jury's verdict that age was a motivating factor for the employee's termination).

A comment such as "you're too old to be working here" is a direct and unambiguous statement that would allow a reasonable jury to conclude that age was an impermissible factor in the decision to terminate Davis. *Compare Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 439 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (concluding that a human-resource manager's notes listing employees' ages was not probative of the employer's intent to discriminate, because for an age-based comment to be probative, "it must be direct and unambiguous, allowing

11

a reasonable jury to conclude without inferences or presumptions that age was an impermissible factor in the decision to terminate the employee"), *with Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 315–16 (5th Cir. 2004) (holding that a rational factfinder could conclude that age played a role in the employer's decision to terminate the employee when the supervisor made numerous ageist comments, such as telling the employee "you're too old" and suggesting the employee was "probably in bed or he's sleeping by [now] because of his age" (alterations in original)), *and Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 183 (2d Cir. 1992) (noting the "ample" evidence of age discrimination when the employer told the terminated employee he should not have hired other older employees who "should have been, or should have remained, retired," and the employer suggested there was "no way [a 60-year-old employee] can contribute" or that a 64-year-old employee could be "superior"); *see also Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985) (discussing the usual lack of direct evidence in an employment-discrimination case because "[e]mployers are rarely so cooperative as to . . . inform a dismissed employee candidly that he is too old for the job"), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512–13, 113 S. Ct. 2742, 2750, 125 L. Ed. 2d 407 (1993).

Further, Davis testified that Anderson remarked at every staff meeting—as often as every week—that Davis was retiring soon, was the next person to go, and was "senior," although he knew that she did not intend to retire and was senior only in age and not experience. These comments suggest a link between Davis's age and her lack of continued employment with the County. Anderson also made at least one indirect age-related comment (about her birthday cake catching fire) several weeks before her termination. Frequent references to Davis's age support an inference of age discrimination. *See Ezell v. Potter*, 400 F.3d 1041, 1051 (7th

Cir. 2005) (noting that there was direct evidence of age discrimination where two supervisors expressed a desire to replace older workers with younger workers, and one supervisor "frequently made disparaging remarks about older workers, referred often to [the employee's] gray hair and beard, commented on his slowness and suggested that because of his speed, he should consider another line of work"); *Russell*, 235 F.3d at 226 (explaining that a supervisor's frequent reference to the employee as "old bitch" supported the jury's verdict that the employer had discriminatory motivations; "[t]hat [the employer] did not explicitly remark to [the employee], 'I do not like you because you are old,' does not render [the employee's] evidence infirm."); *Buckley v. Hosp. Corp. of Am., Inc.*, 758 F.2d 1525, 1530 (11th Cir. 1985) (reasoning that there was "substantial direct evidence" of discriminatory intent because the supervisor expressed surprise at the longevity of staff members, indicated that the employer needed "new blood" and that he intended to recruit younger employees, and commented on the employee's "advanced age" as a factor causing her stress); *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 480 (Tex. App.—El Paso 2013, pet. filed) (holding that there was legally sufficient direct evidence that age was a motivating factor in termination where the manager made comments "nonstop," "three or four times a week," and "all the time" that the employee was "old" and had "gray hair" and "sagging breasts"); *see also Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466 (5th Cir. 1989) ("Indirect references to an employee's age can support an inference of age discrimination."), *cited in Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353 & n.25 (5th Cir. 2005) (further noting that examples of such indirect age-related comments are "that an employee needed to look 'sharp' if he were going to seek a new job, and that he was unwilling and unable to 'adapt' to change" (quoting *Rachid*, 376 F.3d at 315)).

Based on the direct evidence of what Anderson said and did, reasonable and fair-minded people could have found that age was a motivating factor in Davis's termination.

## 2. *Pretext and Additional Evidence*

Davis also adduced evidence that the County's proffered reason for termination was a pretext for discrimination. Regarding the reason offered for termination, the County contends on appeal that Davis's complaints about Clark "clearly justified [Anderson's] conclusion . . . that there was 'no longer going to be a worthy working relationship.'"[9]

But Clark testified that she informed Anderson that she and Davis could work together, and she repeatedly told him that she did not want Davis fired. Davis similarly testified that there was no turmoil between Clark and her. And finally, considering the three-month delay in firing Davis after she complained about Clark, along with evidence that Anderson had wanted to fire Davis several weeks into his tenure, the jury could have believed that Davis's complaint about Clark was not Anderson's sole motive for firing Davis. *See City of Keller*, 168 S.W.3d at 819 ("Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another.").

When the evidence of pretext is considered in light of Anderson's repeated references to Davis's age—which were made in the context of Davis's lack of future employment with the County—a reasonable jury could have inferred that

---

[9] On appeal, the County does not suggest that Davis's job performance generally was a reason for her termination. Regardless, the testimony at trial from employees in other departments and employees in the Purchasing Department, and the meager evidence of poor work performance in general, would have enabled the jury to conclude that Davis's job performance was not the sole motivating factor for her termination.

14

Anderson intended to make Davis "the next one to go" at least in part because of her "senior" age. *See Knight v. Auto Zone, Inc.*, 494 F.3d 727, 730–31, 736 (8th Cir. 2007) (holding that there was legally sufficient evidence of age discrimination, because although the employer argued that the employee was terminated for engaging in verbally abusive behavior, the employee offered evidence that his work performance had been strong; that the manager documented no complaints about the employee's behavior before initiating an investigation; and that the manager repeatedly made negative age-related comments, such as referring to the employee as "old man" and "old fart" and telling the employee he was "too old to do his job"); *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922–23 (8th Cir. 2000) (holding that a factfinder could conclude that age was a determinative factor because even stray remarks, such as referring to the employee as "the old guy" and saying "[w]e need to get rid of the old guys," gave rise to an inference of discrimination when considered in conjunction with the prima facie case and evidence of pretext); *see also Quantum Chem. Corp.*, 47 S.W.3d at 481–82 ("Proving the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination.").

On this record, the jury reasonably could have rejected the County's explanation for Davis's termination and concluded that Anderson's decision to terminate her employment was motivated in part by Davis's age. We therefore overrule the County's seventh issue.

## II. SECTION 1983 FREE SPEECH

In its first six issues and eighth issue, the County contends the evidence is legally insufficient to support the jury's various findings related to Davis's Section 1983 claim based on the exercise of her First Amendment right to free speech.

Neither party has briefed the question of whether we must consider the sufficiency of the evidence for this claim if we conclude there is legally sufficient evidence of age discrimination, as we concluded above.

Ordinarily, when a "judgment rests on multiple theories of recovery and one theory is valid, an appellate court need not address other theories." *Barbarawi v. Ahmad*, No. 14-07-00790-CV, 2008 WL 2261433, at *4 n.2 (Tex. App.—Houston [14th Dist.] May 27, 2008, no pet.) (mem. op.); *accord Harrison v. J.W. Nelson Transp., Inc.*, No. 14-09-00273-CV, 2010 WL 4013534, at *3 (Tex. App.—Houston [14th Dist.] Oct. 14, 2010, no pet.) (mem. op.) (declining to address negligence claims because the breach-of-warranty claim fully supported the damages and attorney's fees awarded). However, in its seventh issue (regarding age discrimination), the County contends that Davis's age-discrimination claim, "if supported by the evidence, would entitle [Davis] to a recovery of back wages and equitable relief only." For this proposition, the County cites a case interpreting the federal Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626 (2012). *See generally Lorillard v. Pons*, 434 U.S. 575, 98 S. Ct. 866, 55 L. Ed. 2d 40 (1978).[10]

But Davis did not sue for a violation of the ADEA. She claimed a violation of the TCHRA, which authorizes recovery of each category of damages assessed by the jury.[11] *See* TEX. LAB. CODE ANN. § 21.2585(a), (d) (West 2006) (providing

---

[10] The damages assessed by the jury include some elements that are not recoverable under the ADEA, such as mental anguish. *See Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326, 115 S. Ct. 2159, 2162, 132 L. Ed. 2d 294 (1995) ("[T]he Courts of Appeals have unanimously held . . . that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress.").

[11] The jury awarded damages as follows:

(1) Counseling expenses incurred in the past: $0.

(2) Mental anguish in the past: $50,000.

that damages for an unlawful intentional employment practice include compensatory damages such as "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"); *id*. § 21.259 (authorizing recovery of attorney's fees); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 816, 819 (W.D. Tex. 2006) (noting that TCHRA allows for recovery of back pay, front pay, and compensatory damages such as mental anguish). Because Davis successfully asserted a cause of action for which these damages are available, it is unnecessary for us to address the County's issues numbered one through six and eight.

### III. FUTURE MENTAL ANGUISH

The County's ninth issue is stated as follows: "The verdict of the jury as to damages is so outrageous that it indicates that they failed to give the Defendant a fair hearing of the evidence it presented." Under the argument section of its brief, however, the County also contends, "There simply is a complete void in the evidence that would, by inference, or otherwise, lead to such an extraordinary award. . . . Appellant does contest the legal sufficiency of the evidence on damages. There is no evidence at all of future mental anguish." We therefore understand the County to challenge both the legal and factual sufficiency of the

---

(3) Mental Anguish that in reasonable probability Plaintiff will suffer in the future: $500,000.

(4) Loss of earnings in the past: $258,090.

(5) Loss of earnings that in reasonable probability Plaintiff will suffer in the future: $318,147.

(6) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits in the past: $143,100.

(7) Loss of retirement, health, medical, and life insurance, and other similar fringe benefits that in reasonable probability Plaintiff will suffer in the future: $38,808.

The trial court also awarded $91,908.75 in attorney's fees and $1,867.58 in court costs and expenses, as well as pre- and post-judgment interest.

17

evidence supporting the jury's finding that $500,000 would fairly and reasonably compensate Davis for the mental anguish that, in reasonable probability, she will suffer in the future as a result of the termination of her employment.[12]

Where, as here, there were no objections to the jury charge, we measure the sufficiency of the evidence by the charge as submitted. *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 & n.30 (Tex. 2005). In the charge, "mental anguish" was defined as follows:

> "Mental anguish", as [an] element of damages, implies [a] relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of those, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation.

*See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) (stating the test for proof of mental anguish). Regarding future mental anguish, the jury was instructed to find the amount that would fairly and reasonably compensate Davis for mental anguish "that in reasonable probability [she] will suffer in the future" as a result of her termination. *See Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 917 (Tex. 2008) (per curiam) (holding that an award for future mental anguish must be supported by evidence demonstrating a reasonable probability that the claimant will suffer compensable mental anguish in the future). But there is no

---

[12] Our dissenting colleague would hold that the County waived this issue by failing to cite to the record, but when an appellant contends that there is "a complete absence of evidence" on an essential element, there is nothing specific to cite, and the appellate court must review the entire record. *See City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167–68 (Tex. 2004) (per curiam). The County argued that the evidence of future mental anguish "is a complete void" and that "[t]here is no evidence at all of future mental anguish." We accordingly have reviewed the entire record, and the County is right: there is no such evidence, and thus, there was nothing to cite. Although the dissent also points out that the County did not identify the standard of review, this is not required by the Texas Rules of Appellate Procedure.

evidence that there is a reasonable probability that Davis will suffer a relatively high degree of mental pain and distress in the future as a result of her termination.

Davis testified only about mental anguish she had suffered in the past. She was asked how she felt (1) when being escorted to her desk to remove her things, (2) when she spoke with one of the county commissioners immediately after leaving the office on the day she was terminated, and (3) when she left her attorney's office the next day after consulting him about her termination. Davis then was asked how she spent the next few days or month. That exchange was as follows:

> Q: So, what happened? How did you spend the next few days not going to work? I don't know. Month? How long? What did you do?
>
> A: I was—I stayed in my house. I stayed in the house. I just wouldn't go outside. I didn't want to go anywhere. I was mortified at being fired. Just it hurt me. It really hurt me really bad because I love my job. I did a good job. . . . I felt really injured. I felt hurt. I was sick. I was really sick at home. Every time the phone would ring or if someone called to talk to me about it or someone wanted to come over and visit with me about it, I got sick to my stomach. I had intestinal problems. I had to go to my doctor and get medication for it.
>
> . . . .
>
> Q: And did she give you medication?
>
> A: She did. I had to get some medication for my colon. And I had something—I think it's called Ativan I got a generic of it. So, I don't know the real name. I don't know.
>
> Q: What was that for?
>
> A: That was a sedative sort of medicine.
>
> Q: And did there come a time when you went and saw another doctor?
>
> A: Yes, I did. I saw . . . a psychiatrist here in Beaumont.

19

Q: Why did you go to a psychiatrist?

A: I couldn't sleep at night. I didn't want to go anywhere. I was embarrassed. I cried all the time. I cried all the time. I cried at night. I cried during the day. I just cried all the time. I couldn't sleep at night. I mean, my husband and I, we—he had bought this—a camp in Louisiana on a river, on a creek. I—I couldn't go there. I couldn't be—I couldn't be away from my house. I just couldn't go somewhere. I couldn't leave the house because I just felt horrible. I don't know how to explain it. I felt really bad all the time. I was depressed really. I was depressed. My husband said I had to go because he couldn't stand it any more because he didn't like what was happening to me.

Davis was not asked if she continues to have intestinal problems or insomnia, and she did not testify that she is still under a doctor's care or has a continuing need to take medication. Although there is evidence that Davis suffered "grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public humiliation" at one time, all of her testimony about mental anguish was presented in the past tense. Not only is there no evidence that there is a reasonable probability that Davis will suffer compensable mental anguish in the future, there is not even any evidence that she was continuing to experience mental anguish at the time of trial.

We sustain the County's ninth issue.

## IV. CONCLUSION

Although we have overruled each of the County's issues concerning liability and the scope of available relief, we agree that there is no evidence of future mental anguish. We accordingly modify the judgment to eliminate the award of $500,000 for future mental anguish, and affirm the judgment as modified.


/s/              Tracy Christopher
                           Justice

Panel consists of Justices Christopher, Jamison, and McCally (McCally, J., dissenting).



In The

# Fourteenth Court of Appeals

### NO. 14-13-00663-CV

### JEFFERSON COUNTY, TEXAS, Appellant

### V.

### DONNA DAVIS, Appellee

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Court Cause No. B-182,252**

## D I S S E N T I N G   M E M O R A N D U M   O P I N I O N

Assuming, as the majority concludes, that Issue No. 9 of the County's brief raises a legal- or factual-sufficiency point of error regarding future mental anguish damages, I agree with Davis that we should not reach the issue because of the County's briefing waiver.[1]   Therefore, I would affirm the trial court's judgment in

---

[1] The County's first eight issues begin with the statement, "There is no evidence . . . ." Issue No. 9 complains about a "'run-away' jury" and states: "The verdict of the jury as to

its entirety. Because the majority reaches Issue No. 9 and reverses on that basis, I respectfully dissent.

Through her appellee's brief, Davis urges that the County's wholesale failure to cite to the record waives any sufficiency challenge to damages. Davis notes that the only category of damages attacked by the County is future mental anguish damages. By its nature, evidence of future mental anguish is speculative. Therefore, we call upon the jury to evaluate non-speculative evidence and draw reasonable inferences about the future. Here, the County does not challenge the sufficiency of the evidence supporting past mental anguish damages. I believe the County, as appellant, has committed textbook briefing waiver by failing to cite to or otherwise analyze why the unchallenged evidence underpinning the past mental anguish element does not in any way support future mental anguish damages or does not support the amount awarded.

When an appellant's brief fails to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record," Tex. R. App. P. 38.1(i), then Rule 38.9 affords the appellate court two choices: (1) deem the appellant's issue waived; or (2) exercise discretion to allow amendment or rebriefing. *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (noting the "settled rule that an appellate court has some discretion to choose between deeming a point waived and allowing amendment or rebriefing"); *Rendleman v. Clarke*, 909 S.W.2d 56, 59 (Tex. App.— Houston [14th Dist.] 1995, writ dism'd) (same). We construe briefs liberally, expect substantial compliance, and "may" require a brief to be amended, supplemented, or redrawn for formal defects, and we "may" require additional

---

damages is so outrageous that it indicates that they failed to give the Defendant a fair hearing of the evidence it presented."

2

briefing for substantive defects. Tex. R. App. 38.9. The rule does not afford an appellate court discretion to ignore or forgive briefing deficiencies and address the merits of an appellant's point of error that does not comply with this rule.

I do not endorse a cavalier application of briefing waiver. For example, an appellant's bare statement that there is "no evidence" does not waive a legal sufficiency point when the facts on appeal are undisputed and the gravamen of the sufficiency point is a question of law that the appellant has amply supported with citations to relevant authorities. *See City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 167–68 (Tex. 2004). Similarly, an appellant does not waive the point when the appellant cites to all of the material facts in a statement of facts and merely fails to repeat the citations in its analysis. *See id.* at 167. I completely agree that the Supreme Court rejects bright-line briefing waiver under these circumstances. *See id.* at 167–68.

However, the Supreme Court also embraces briefing waiver where an appellant fails to cite to the record to support a no-evidence argument that the evidence is so weak as to do no more than create a mere surmise or suspicion— when there is no more than a mere scintilla of evidence. *See id.* at 167 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 363 (1960)). Thus, citation to the record is required "when the vital fact must be inferred from other relevant facts and circumstances which are proved." *See* Calvert, *supra*, at 363.

Here, the County suggests that Davis's evidence would not enable the jury to reach such an "outrageous award" of future mental anguish damages, which is "so excessive that the jury must have been dominated by passion or prejudice and could not have fairly weighed disputed evidence on the liability issue." But, the amount of a party's future mental anguish damages is one of those "vital facts" that

3

may be inferred from other circumstantial evidence. *See Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (direct evidence not always required). Texas law permits jurors to make a reasonable inference that a party will suffer future mental anguish damages. *Adams v. YMCA of San Antonio*, 265 S.W.3d 915, 918 (Tex. 2008); *see Wichita Cnty. v. Hart*, 892 S.W.2d 912, 927 (Tex. App.—Austin 1994) (jury could infer future mental anguish damages from past and present mental anguish when the terminated employee had not been reinstated; distinguishing case where the employee had been reinstated), *rev'd on other grounds*, 917 S.W.2d 779 (Tex. 1996).

The County necessarily contends that the jury could not make a reasonable inference from the unchallenged evidence of past mental anguish that Davis's past mental anguish would continue in the future. But, the County does no more to support that contention than mention the words "no evidence."

Therefore, I view the County's briefing of its ninth issue regarding future mental anguish damages as deficient to an extent that liberal construction cannot repair. Within its ninth issue, the County does not provide a single citation to any part of the 640-page transcript of trial testimony, which includes testimony from the plaintiff, the plaintiff's co-workers, and the plaintiff's damages expert who was also a close relative. The County does not provide a single citation to any one of the 200 pages of exhibits. And, the County does not refer to any of the record citations within the statement of facts, perhaps because all such citations pertain to the merits of liability. The County presents no analysis of how the evidence adduced in this five-day trial—including the unchallenged evidence of past mental anguish—when viewed under the appropriate standard of review,[2] amounts to

---

[2] The County does not provide the standard of review for legal or factually sufficiency. Nor does the county cite any cases addressing the sufficiency of the evidence for future mental anguish damages.

insufficient evidence or no evidence of future mental anguish damages.

Because Davis urged briefing waiver on this point, the County had ample opportunity to rebrief its ninth issue but did not. Because the County failed to rebrief, I would deem the County's ninth issue waived. *See Rendleman*, 909 S.W.2d at 59 (deeming the appellant's sufficiency issue waived because the appellant failed to cite to the record; declining to exercise discretion to allow rebriefing because the appellant failed to rebrief during the seven months since the appellee's brief had been filed).

Accordingly, I respectfully dissent.

/s/    Sharon McCally
       Justice

Panel consists of Justices Christopher, Jamison, and McCally. (Christopher, J., Majority).

5



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00663-CV

---

### JEFFERSON COUNTY, TEXAS, Appellant

### V.

### DONNA DAVIS, Appellee

---

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Court Cause No. B-182,252**

---

## SUPPLEMENTAL MEMORANDUM OPINION ON DENIAL OF REHEARING

Although we deny the parties' respective motions for rehearing, we issue this supplemental memorandum opinion to briefly address a jurisdictional argument raised by the County.

In its motion for rehearing, the County attempts to challenge damage findings other than the assessment of damages for future mental anguish. Because

future mental anguish was the only damage finding that was even arguably challenged in the County's brief, its challenge to the other damage findings are waived. *See Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 821 n.1 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (sub. op.); *Harris County v. Nagel*, 349 S.W.3d 769, 790 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (sub. op.).

The County contends, however, that if the award of front pay constitutes compensable damages, then that award is subject to a $300,000 damages cap. The County further asserts that "the front pay issue implicates subject matter jurisdiction," and suggests that we properly can consider its application whenever the issue is raised. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) ("Subject matter jurisdiction is never presumed and cannot be waived.").

The County is mistaken in asserting that we can consider this argument. The damages cap concerns immunity from liability, not immunity from suit; thus, contrary to the County's argument, a damages cap does not affect subject-matter jurisdiction. It instead is an affirmative defense that is waived if not pleaded. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam); *Tex. Comm'n on Human Rights v. Morrison*, 346 S.W.3d 838, 850 (Tex. App.—Austin 2011), *rev'd on other grounds*, 381 S.W.3d 533 (Tex. 2012) (per curiam); *O'Dell v. Wright*, 320 S.W.3d 505, 515–16 (Tex. App.—Fort Worth 2010, pet. denied); *Shoreline, Inc. v. Hisel*, 115 S.W.3d 21, 25 (Tex. App.—Corpus Christi 2003, pet. denied); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97, 904 (Tex. 2000) (determining that a damages cap was adequately raised in plaintiff's pleading and referring to such a "liability limitation" as an affirmative defense).

2

Because the damages cap was neither pleaded nor argued before now, the arguments concerning its application are waived.

/s/    Tracy Christopher
       Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 2. Protection of Laborers
      Subtitle A. Employment Discrimination
        Chapter 21. Employment Discrimination (Refs & Annos)
          Subchapter C. Application; Exceptions

V.T.C.A., Labor Code § 21.125

§ 21.125. Clarifying Prohibition Against Impermissible Consideration of Race,
Color, Sex, National Origin, Religion, Age, or Disability in Employment Practices

Currentness

(a) Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice, even if other factors also motivated the practice, unless race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force.

(b) In a complaint in which a complainant proves a violation under Subsection (a) and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court may grant declaratory relief, injunctive relief except as otherwise provided by this subsection, and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a complaint under Subsection (a), but may not award damages or issue an order requiring an admission, reinstatement, hiring, promotion, or back pay.

**Credits**
Added by Acts 1995, 74th Leg., ch. 76, § 9.05(a), eff. Sept. 1, 1995. Amended by Acts 1997, 75th Leg., ch. 1126, § 1, eff. Sept. 1, 1997.

Notes of Decisions (31)

V. T. C. A., Labor Code § 21.125, TX LABOR § 21.125
Current through the end of the 2013 Third Called Session of the 83rd Legislature

End of Document    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 2. Protection of Laborers
      Subtitle A. Employment Discrimination
        Chapter 21. Employment Discrimination (Refs & Annos)
          Subchapter F. Judicial Enforcement

V.T.C.A., Labor Code § 21.258

§ 21.258. Injunction; Equitable Relief

Currentness

(a) On finding that a respondent engaged in an unlawful employment practice as alleged in a complaint, a court may:

   (1) prohibit by injunction the respondent from engaging in an unlawful employment practice; and

   (2) order additional equitable relief as may be appropriate.

(b) Additional equitable relief may include:

   (1) hiring or reinstating with or without back pay;

   (2) upgrading an employee with or without pay;

   (3) admitting to or restoring union membership;

   (4) admitting to or participating in a guidance program, apprenticeship, or on-the-job training or other training or retraining program, using objective job-related criteria in admitting an individual to a program;

   (5) reporting on the manner of compliance with the terms of a final order issued under this chapter; and

   (6) paying court costs.

(c) Liability under a back pay award may not accrue for a date more than two years before the date a complaint is filed with the commission. Interim earnings, workers' compensation benefits, and unemployment compensation benefits received operate to reduce the back pay otherwise allowable.

**Credits**
Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

Notes of Decisions (31)

V. T. C. A., Labor Code § 21.258, TX LABOR § 21.258
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Labor Code (Refs & Annos)
    Title 2. Protection of Laborers
      Subtitle A. Employment Discrimination
        Chapter 21. Employment Discrimination (Refs & Annos)
          Subchapter F. Judicial Enforcement

V.T.C.A., Labor Code § 21.2585

§ 21.2585. Compensatory and Punitive Damages

Currentness

(a) On finding that a respondent engaged in an unlawful intentional employment practice as alleged in a complaint, a court may, as provided by this section, award:

(1) compensatory damages; and

(2) punitive damages.

(b) A complainant may recover punitive damages against a respondent, other than a respondent that is a governmental entity, if the complainant demonstrates that the respondent engaged in a discriminatory practice with malice or with reckless indifference to the state-protected rights of an aggrieved individual.

(c) Compensatory damages awarded under this section may not include:

(1) back pay;

(2) interest on back pay; or

(3) other relief authorized under Section 21.258(b).

(d) The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and the amount of punitive damages awarded under this section may not exceed, for each complainant:

(1) $50,000 in the case of a respondent that has fewer than 101 employees;

(2) $100,000 in the case of a respondent that has more than 100 and fewer than 201 employees;

(3) $200,000 in the case of a respondent that has more than 200 and fewer than 501 employees; and

(4) $300,000 in the case of a respondent that has more than 500 employees.

(e) For the purposes of Subsection (d), in determining the number of employees of a respondent, the requisite number of employees must be employed by the respondent for each of 20 or more calendar weeks in the current or preceding calendar year.

**Credits**

Added by Acts 1995, 74th Leg., ch. 76, § 9.07(b), eff. Sept. 1, 1995. Amended by Acts 1999, 76th Leg., ch. 872, § 13, eff. Sept. 1, 1999.

Notes of Decisions (90)

V. T. C. A., Labor Code § 21.2585, TX LABOR § 21.2585
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 21. Civil Rights (Refs & Annos)
      Subchapter VI. Equal Employment Opportunities (Refs & Annos)

42 U.S.C.A. § 2000e-5

§ 2000e-5. Enforcement provisions

Currentness

<Notes of Decisions for 42 USCA § 2000e-5 are displayed in three separate documents. Notes of Decisions for subdivisions I to V are contained in this document. For Notes of Decisions for subdivisions VI to XVIII, see second document for 42 USCA § 2000e-5. For Notes of Decisions for subdivisions XIX to end, see third document for 42 USCA § 2000e-5.>

(a) Power of Commission to prevent unlawful employment practices

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2 or 2000e-3 of this title.

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the "respondent") within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

(c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) [1] of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

(d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

(e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual

becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

**(B)** In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master

**(1)** If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

**(2)** Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

**(3)** Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

**(4)** It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

**(5)** It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders

**(1)** If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

**(2)(A)** No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e-3(a) of this title.

**(B)** On a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court--

**(i)** may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

**(ii)** shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

(h) Provisions of chapter 6 of Title 29 not applicable to civil actions for prevention of unlawful practices

The provisions of chapter 6 of Title 29 shall not apply with respect to civil actions brought under this section.

(i) Proceedings by Commission to compel compliance with judicial orders

In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

(j) Appeals

Any civil action brought under this section and any proceedings brought under subsection (i) of this section shall be subject to appeal as provided in sections 1291 and 1292, Title 28.

(k) Attorney's fee; liability of Commission and United States for costs

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

**CREDIT(S)**

(Pub.L. 88-352, Title VII, § 706, July 2, 1964, 78 Stat. 259; Pub.L. 92-261, § 4, Mar. 24, 1972, 86 Stat. 104; Pub.L. 102-166, Title I, §§ 107(b), 112, 113(b), Nov. 21, 1991, 105 Stat. 1075, 1078, 1079; Pub.L. 111-2, § 3, Jan. 29, 2009, 123 Stat. 5.)

Notes of Decisions (2308)

Footnotes
1       So in original. Probably should be subsection "(b)".
42 U.S.C.A. § 2000e-5, 42 USCA § 2000e-5
Current through P.L. 113-296 approved 12-19-2014

---

**End of Document**                                      © 2015 Thomson Reuters. No claim to original U.S. Government Works.